Bell *v.* Zoning Board of Appeals of Cohasset.

LOWRY M. BELL, JR., & another[1] *vs.* ZONING BOARD OF
APPEALS OF COHASSET & others.[2]

Norfolk.    April 21, 1982. — June 30, 1982.

Present: ARMSTRONG, CUTTER, & DREBEN, JJ.

*Zoning,* By-law, Tennis court.

In an action to set aside, as in excess of its authority, the refusal of a
municipal board of appeals to grant an amendment to a building per-
mit issued to the plaintiffs for construction of a fenced tennis court on
their land as an accessory residential use, where it appeared that the
zoning by-law provisions, which the board considered, were am-
biguous and uncertain as applied to the plaintiffs' unusually shaped
parcel of land and that the by-law's definitions applied only to build-
ings, the trial judge correctly determined that the plaintiffs were en-
titled to construct the tennis court as proposed.  [101-105]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 28, 1980.

The case was heard by *Sherman,* J., a District Court
judge sitting under statutory authority.

*Thomas D. Burns* (*Chester A. Janiak* with him) for Zon-
ing Board of Appeals of Cohasset & another.

*Marc K. Temin* (*Michael B. Keating* with him) for Peter J.
Mazza & others, interveners.

*Charles J. Humphreys* for the plaintiffs.

CUTTER, J.  The Bells, as tenants by the entirety, are own-
ers of a large parcel of land on Rice Island in Cohasset in an
R-C district (minimum area 30,000 square feet for a single

[1] Diana M. Bell, wife of Lowry M. Bell, Jr.

[2] The building inspector and zoning officer of Cohasset was joined as a
party. In addition Peter J. Mazza, Marilyn Mazza, David L. Weltman,
Carl R. Hurtig, and Martha Hurtig, neighbors or abutters of the Bells,
have been allowed to intervene and have filed briefs.

family house). The portion of the Bells' land here in issue is bounded on the north by land of Peter J. and Marilyn Mazza, from which it is separated by Gammons Road, a paved private way of varied width as far as the eastern end of the Mazza's parcel, and to the east shown as a "peastone" road toward the Bells' house. In any event, no road or driveway goes beyond the Bells' house to the south. On the north and east, lies the Little Harbor of Cohasset, and on the south is land of George and Barbara Crampton. The Mazzas, but apparently not the Cramptons, are interveners opposing the Bells' project. See n.2.

The Bells' house and garage are at the east end of their parcel. West of the Bells' driveway (or the extension of Gammons Road) is a roughly triangular piece of land bounded on the north by the Mazza land and Gammons Road about 285 feet, on the east by the Bells' driveway area about 180 to 200 feet and on the south by the Cramptons' land, about 365 feet (all distances roughly computed from measurements shown on plans in evidence).[3] The triangular area probably contains at least 26,000 square feet and from the plans appears to be substantially less than half the Bells' whole parcel. Photographs show the triangular area to have been somewhat uneven, open land with a few trees and outcroppings of rock and ledge. In this part of their land, the Bells have sought to build, and now have built, a tennis court for use by them, their family, and guests. The interveners and others have objected, asserting that such a court is in violation of the Cohasset zoning by-law.

There were various earlier efforts to obtain a building permit to construct a tennis court and the Bells received a permit for the construction of an unfenced tennis court of standard dimensions (containing only the area within the outside tapes) but without any additional playing area. The Bells then applied on May 30, 1980, to the town building

---

[3] The Bells' brief asserts that their total parcel contains 81,700 square feet but the record page mentioned to support this statement does not set out the area of the parcel.

inspector to amend their existing permit to allow a fenced court with additional playing areas surrounding the standard tennis court and with four lights to make possible night use of the court. In greatly simplified form this plan is reproduced on the following page.[4]

The building inspector decided that because of "the controversy surrounding the construction of your tennis court, and in particular the required setback from Gammons Road, and the side yard requirement from the southerly bound . . . [with] the Crampton property," he would not grant an amendment of the Bells' building permit until the matter had been decided by the town's zoning board of appeals (the board).

The Bells, on June 4, appealed to the board from this decision and requested a "determination" whether they might "as a matter of right under the . . . [b]ylaw construct the tennis court and appurtenances . . . shown on the plan" attached to their appeal application. In the alternative, the Bells sought any appropriate variance.

The board, after hearing, split three ways. The chairman, a civil engineer and registered land surveyor of substantial experience in zoning matters, determined that, under the by-law, the tennis court and fence constituted a structure which was not a building and therefore was not subject to side yard requirements. He regarded the proposed court as subject only to § 5.2.8 of the by-law. Another member, in a long and somewhat complicated decision, declined to grant either the amendment of the permit or any variance. The third member pointed out that the zoning by-law "does not contemplate lots shaped as is the Bell lot. Lots other than the usual roughly rectangular or slightly wedge shaped are not provided for" in the by-law. This member concluded that the matter would "end up in court" where it would "receive consideration of the main question[:] should the tennis

---

[4] The earlier efforts to obtain a permit were treated by the building inspector, by the zoning board of appeals, and by the Superior Court as largely irrelevant. We do likewise.

# PLAN OF PROPOSED TENNIS COURT
## Cohasset, Massachusetts

court be permitted or would it be too damaging to a neighbor."

Subsequently, the Bells brought this proceeding in the Superior Court seeking to annul the board's action as exceeding its authority, to obtain a "determination" of the Bells' rights, to order the building inspector to issue an amendment of their building permit, and to obtain a declaration that they, as matter of law, may build the tennis court proposed. In the Superior Court the case was heard by a District Court judge sitting by statutory authority. The claim for a variance set out in the Bells' complaint properly was treated by the trial judge as waived by their counsel in open court.

The judge determined that under the by-law the Bells were entitled to construct the proposed tennis court. Judgment was entered to that effect. We think that the judge correctly treated the issue before him as being the propriety (under the zoning by-law) of the tennis court proposed in the plan dated May 29, 1980. This issue was raised by the Bells' complaint and was the issue in fact decided by the judge.[5] The judge, we think, also correctly decided that the split vote of the board constituted a determination not to reverse the building inspector's decision, rather than a failure to act constituting a "deemed . . . grant of the relief . . . sought." See G. L. c. 40A, § 15, fourth and fifth pars., as

---

[5] The Bells have not argued orally or by brief that a by-law, in effect denying (to the owners of a residential land parcel of the substantial size here involved)·the opportunity to build, as a customary accessory use, a recreational facility such as a tennis court near their house, is constitutionally invalid. See 5 Rohan, Zoning and Land Use Controls § 36.03[2] (1981 & supp.) and 2 *id.* § 10.03[3]. See also the authorities cited and distinguished in *MacNeil* v. *Avon*, 386 Mass. 339 (1982). Compare *Aronson* v. *Sharon*, 346 Mass. 598, 603-606 (1964). The principal constitutional contention advanced by the Bells (which the trial judge found it unnecessary to decide) is that the by-law "with respect to the construction of tennis courts, fences, and other similar structures is vague, confused, inconsistent, and ambiguous" and therefore constitutionally invalid. See *O'Connell* v. *Brockton Board of Appeals*, 344 Mass. 208, 212 (1962). Compare *Berliner* v. *Feldman*, 363 Mass. 767, 770-772 (1973). Compare also *Farmer* v. *Billerica*, 381 Mass. 775 (1980).

appearing in St. 1975, c. 808, § 3. We proceed to consider whether the by-law, reasonably interpreted, permits the tennis court proposed in the plan of May 29, 1980.

The parties apparently agree that the Bells' land is in an R-C district. Provisions of the by-law (adopted in 1978 so far as here relevant) which have been relied on by the parties, are set out in an appendix to this opinion.[6]

It does not appear to be argued that a tennis court is not "a [recreational] use customarily incidental to that of a single family detached dwelling." See *Williams* v. *Inspector of Bldgs. of Belmont*, 341 Mass. 188, 189, 193-194 (1960). Compare *Harvard* v. *Maxant*, 360 Mass. 432, 433 et seq. (1971), where a private airstrip was distinguished from tennis courts and similar recreational facilities.[7] The question now decided is only whether the tennis court conflicts in its placement with any clear provisions of the by-law. The defendants and interveners contend that the northwest corner of the fenced tennis court (which is 24.1 feet from the southern line of Gammons Road) and the southwest corner of the court (which is 6.1 feet from the boundary with the Cramptons' land) are in violation of the by-law. To decide whether this is so requires a careful reading of the definitions and other pertinent provisions of the by-law.

The special characteristics of the Bells' lot make application of the by-law to it somewhat difficult. Because their house, on the easterly end of their lot, faces west toward

[6] Examination of the whole by-law shows that the board's third member, who was unable to reach a decision, was correct in concluding that this complex by-law is not well adapted to the regulation of large irregularly shaped lots like the Bells' lot and has been framed largely to control more conventionally shaped lots.

[7] Tennis courts, as accessory residential uses, have received much discussion by text authorities. See 3 Williams, American Land Planning Law § 74.25 (1975 & supp. 1981); 2 Rathkopf, Zoning and Planning § 23.06[4] (4th ed. & supp. 1981); 2 Anderson, American Law of Zoning § 960 (2d ed. 1976 & supp. 1981); Annot. 32 A.L.R.3d 424, 444-445 (1970), and cases cited. More recent decisions include *Huntington* v. *Park Shore Country Day Camp*, 47 N.Y.2d 61, 64 et seq. (1979); *Klein* v. *Lower Macungie Zoning Hearing Bd.*, 39 Pa. Commnw. Ct. 81, 83-89 (1978), and *Currey* v. *Kimple*, 577 S.W.2d 508, 512-514 (Tex. Civ. App. 1978).

their driveway or the extension of Gammons Road (as shown on the sketch plan), it would be natural to think of the areas to the east of the house as their rear yard and the areas north and south of the house as their side yards and the whole or most of the area in front of the house to the west as front yard. This does not fit in well with the by-law definitions of "Yard, Front (Setback)" and "Yard, Side" or with the definitions of "Frontage" (as the "length of the line dividing a lot from the right-of-way of the street on which it bounds"), or "Lot Line, Front" which is "[t]he property line dividing a lot from a street," or "Lot Line, Rear" which is "[t]he lot line opposite the front lot line." The record does not disclose whether Gammons Road extends into the Bells' land or whether the "peastone" extension of it is regarded as merely the Bells' driveway or a "Driveway, Legal Service." The answer to this question is far from clear. In any event, the by-law definitions of "Yard" and "Frontage" do not seem well adapted for application to this lot.[8]

The definitions of "Yard" seem to discuss, and to relate to, buildings only. See the emphasized language in these definitions, as set out in the appendix. "Building" is defined (separately from "Structure") as "any structure . . . having a roof or other covering . . . for the shelter of persons . . . or property . . . ." The Bells contend, we think correctly, that the three definitions of "yard" restrict only the erection of buildings and that the only by-law restriction clearly applicable to nonbuilding structures (i.e. those which provide no shelter) is § 5.2.8. That section provides that no structure (other than certain specified items) "over five (5) feet in height) shall be located nearer to the exterior line of any street than either fifteen (15) feet or the permitted setback

[8] Even on the by-law interpretation argued for by the defendants and interveners, the Bells, by locating the court somewhat to the east, perhaps within extensions of the lines of the present tennis court side fences, probably could have complied with all asserted meanings of the by-law provisions. Because of the ledge outcroppings shown in photographs, this might well have involved significant blasting which the interveners might have found more objectionable than the present tennis court.

distance for a building on the lot, *whichever distance is lesser*" (emphasis supplied). That requirement would permit a nonbuilding structure over five feet high more than fifteen feet from the southerly edge of Gammons Road, upon our interpretation of the "Yard" provisions of the by-law, and would similarly permit a nonbuilding structure within any distance of the boundary with the Cramptons, a boundary which is not either a street or near one.

The defendants and interveners assert that controlling weight should be given to the provision in § 5.2.6 that "where the street has a right-of-way width of less than forty (40) feet the setback distance shall be measured from a line on the lot twenty feet from and parallel to the center line of said street." The only definition of "setback," however, is in connection with "Yard, Front (Setback)" which, as noted above, appears to relate only to buildings and not to nonbuilding structures.

The defendants and interveners also take the position that other by-law provisions are controlled by the table of area regulations (in § 5.3) which provides area requirements for single family dwellings and adjacent yards, including "other permitted community facility, structure or principal use" for which a 30 foot front yard is specified. The trial judge treated the language last quoted as inapplicable because he regarded the word "community" as defining not only "facility" but also the words "structure or principal use." The defendants contend that the judge was incorrect in this interpretation (because "community facility" and "structure" and "principal use" are all defined words in the by-law). Even if this be true, we think that the definitions of "Yard" (which, as already noted, we interpret as applying only to buildings) are determinative and that restrictions affecting yards do not prohibit with clarity fences and other nonbuilding structures.[9] In similar fashion, § 5.2.6 does not

---

[9] The by-law before us is less explicit than that discussed in *Scott v. Board of Appeal of Wellesley*, 356 Mass. 159, 161 (1969), mentioned at the arguments. In that case the by-law expressly stated that there "shall be provided for every building *or structure* . . . a front yard of at least

apply here for it deals only with a "setback" defined in "Yards, Front (Setback)."

The by-law does not clearly prohibit the use which the Bells propose to make of their land. It is not necessary to consider whether the by-law restrictions (if interpreted as the defendants and interveners would have us do) would bear so slight a relation to any significant aspect of the public interest as to render them constitutionally invalid. See the discussion in *MacNeil* v. *Avon*, 386 Mass. 339 (1982). The fact is that the restrictions are ambiguous and uncertain as applied to an unusual parcel of land with characteristics for which the by-law makes imperfect provision. If this type of residential accessory use, ordinarily regarded as reasonable (at least on a lot large enough to permit such use), is to be prohibited, it should be done in clear, precise language which fully apprises the landowner of a prohibition not found to exist by the chairman of the zoning board, the trial judge, or this court. See *O'Connell* v. *Brockton Bd. of Appeals*, 344 Mass. 208, 212 (1962). See also 1 Rathkopf, Zoning and Planning § 9.02 (4th ed. & supp. 1981).

*Judgment affirmed.*

APPENDIX

PERTINENT PROVISIONS OF 1978 COHASSET ZONING BY-LAW

[Italics, except in titles and in § 2.1, are supplied emphasis.]

SECTION 2 — DEFINITIONS

2.1 For the purpose of this By law, certain terms and words shall have the meaning given herein. . . . The words *building, structure, lot, land*

---

thirty . . . feet in depth" (emphasis supplied).

If the use in the table in § 5.3 of the word "structures" under the heading "Use as Permitted" (as the defendants and interveners contend) were to be held to govern § 5. 2.8, this would involve an inconsistency between the definitions of "yards," interpreted as applying only to buildings, and the table, and perhaps within the table itself. We think that, in the circumstances, any inconsistency and ambiguity should be resolved by adopting the least restrictive interpretation. See 5 Rohan, Zoning and Land Use Controls § 36.03[2] (1981 & Supp.). The ambiguity is not resolved by consideration of the 1969 zoning by-law submitted for our inspection.

or *premises* shall be construed as though followed by the words "or any portion thereof.". . .

.        .        .        .

### Building

Any structure or portion thereof, either temporary or permanent, *having a roof or other covering* forming a structure (including tents or vehicles located on private property) for *the shelter of persons, animals, or property* of any kind.

### Building, Accessory

A detached subordinate building, the use of which is customarily incidental and subordinate to that of the principal building, and which is located on the same lot as that occupied by the principal building.

### Community Facilities

Premises used for religious, educational, health, or *recreational* uses, including Public Housing for the Elderly, and/or premises operated by a governmental body.

### Driveway, Legal Service

An open space, located on a private lot which is not more than 24 feet in width built for access to a private garage or offstreet parking space.

.        .        .        .

### Frontage

The length of the line dividing a lot from the right-of-way of the street on which it bounds. This is to be measured at the right-of-way boundary and not at the centerline of the street.

.        .        .        .

### Lot

An area or parcel of land in the same ownership, or any part thereof designated by its owner or owners as a separate lot. A parcel shall not be designated a lot unless it conforms with Table of Area Regulations, Section 5.3.

### Lot Corner

A lot at the point of intersection of and abutting on two or more intersecting streets or ways at the intersection.

*Lot Depth*

The average horizontal distance between the front lot line and the rear lot line.

*Lot Line, Front*

The property line dividing a lot from a street. On a corner lot or through lot only one street line shall be considered the front line.

*Lot Line, Rear*

The lot line opposite the front lot line.

*Lot Line, Side*

Any lot line not a front or rear lot line.

.          .          .          .

*Lot Width*

The horizontal distance between the side lot lines as measured at the required front yard depth which may or may not coincide with the actual front setback line. The lot width must be parallel with the center line of traveled way.

.          .          .          .

*Street*

A public or private way for vehicular use which is commonly used by the public or dedicated to public use as shown on a plan of record.

*Structure*

A combination of materials combined at a fixed location to give support or shelter, such as a bin, bridge, building, dock, *fence*, framework, flag pole, platform, retaining wall, reviewing stand, sign, stadium, swimming pool, tank, *tennis court*, tent, tower, trestle, tunnel.

.          .          .          .

*Use*

The purpose for which a structure or lot is arranged, designed, or intended to be used, occupied/or maintained.

*Use Accessory*

A use *customarily incidental and subordinate to the principal use* of a structure or lot, or a use, not the principal use, which is located on the same lot as the principal structure.

.          .          .          .

*Use Principal*

The main or primary purpose for which a structure or lot is designed, arranged, or intended, or for which it may be used, occupied or maintained under this Bylaw.

.        .        .        .

*Yard, Front (Setback)*

An open space extending from the full width of the lot between the front lot line or lines and the nearest point of the *building.*

*Yard, Rear*

An open space, except for an accessory *structure* or *accessory use as herein permitted,* extending across the full width of the lot line between the rear line of the *building* wall and the rear lot line.

*Yard, Side*

An open space extending for the full length of a building between the nearest *building* wall and extending from the front yard to the rear yard. . . .

TABLE OF USE REGULATIONS [§ 4.2]

The Table of Use Regulations that follows is part of this Bylaw.

[Non-Residential District uses omitted]

| USE | Residential | | |
|---|---|---|---|
|  | R-A | R-B | R-C |
| *Residential* | | | |
| Detached one-family dwelling | Yes | Yes | Yes |
| .        .        . | | | |
| Accessory Residential building such as tool shed, boat house, shelter or stable for domestic animals, private greenhouse, guest house, *swimming pool* or private detached garage up to 4 vehicles, including not more than 1 commercial vehicle, or open air parking for only one commercial vehicle. | Yes | Yes | Yes |
| Wall, *fence,* hedge, or *similar enclosure.* | Yes | Yes | Yes |

TABLE OF USE REGULATIONS [§ 4.2] (*continued*)

| USE | Residential | | |
|-----|-----|-----|-----|
| | R-A | R-B | R-C |
| ***Community Facilities*** | | | |
| Church, rectory, parish house, convent or other religious use. | Yes | Yes | Yes |
| *Non-profit educational* use either public, private or religious. | Yes | Yes | Yes |
| .     .     .     . | | | |
| *Golf course*, fishing, reservations or wildlife preserve. | Yes | Yes | Yes |
| .     .     .     . | | | |
| Administrative, cultural, *recreational*, waste water treatment, water supply, fire, police, or other protective use *operated by the Town or other governmental agency*. | Yes | Yes | Yes |

## SECTION 5 — AREA REGULATIONS

### 5.1   APPLICABILITY OF AREA REGULATIONS

The regulations for each district pertaining to lot area and dimensions shall be specified in this Section and set forth in the Table of Area Regulations, and shall be subject to further provisions of this Section.

### 5.2   GENERAL PROVISIONS

.   .   .

5.2.2   For the purposes of determining *setback requirements* both yards of either a through or corner lot that front on a street shall be considered front yards on the street on which they are located.

5.2.3   *A legal service driveway shall have a minimum width of 12 feet.*

5.2.4   *Frontage shall be measured at the street line.* On corner and through lots frontage shall be measured on one street only . . . .

5.2.6   In this Section, the required *setback* distance shall be measured from the nearest exterior side line of the street in question; provided, however, that where the street has a right-of-way width of less than forty (40) feet the *setback* distance shall be measured from a line on the lot twenty feet from and parallel to the center line of said street . . . .

[5.2.7   relates to fences on corner lots] . . . .

5.2.8   No open storage or display of goods, products, materials or equipment, no gasoline pump, vending machine or similar commercial device and, except for a flag, utility, light pole, or mail box, *no other structure over five (5) feet in height* shall be located nearer to the exterior line of any street than either *fifteen (15) feet or the permitted setback distance for a building on the lot, whichever distance is lesser* . . . .

## 5.3   TABLE OF AREA REGULATIONS

The Table of Area Regulations that follows together with the Notes (5.4) are part of this Bylaw.

### TABLE OF AREA REGULATIONS
### MINIMUM REQUIRED LOTS

| Use as Permitted (Table 4.2) | District R-C | | | YARDS | |
| --- | --- | --- | --- | --- | --- |
| | Area (sq. ft.) | Frontage (ft.) | Width (ft.) | Front (ft.) | Side (ft.) |
| Single-family dwelling | 30,000 | 50 | 150 | 30 | 20* |
| Other permitted community facility, structure or principal use | 30,000 | 50 | 150 | 30 | 20* |

[For each of the above listed uses, the table shows, in material omitted for space reasons, that the maximum height permitted in feet and stories is 35 feet and 2½ stories and the maximum coverage permitted is 30%.]

*Permitted accessory building   (may be constructed within 6 feet of the side lines and/or rear lines of its lot if less than 15 feet in height, 100 feet in setback) [May cover 40% of rear yard].

*Portion of a main building less than 15 feet in height   (May extend within 15 feet of the side lines of its lot)