LOWRY M. BELL, JR., & another[1] *vs.* PETER J. MAZZA &
others.[2]

Norfolk. January 8, 1985. — March 4, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Civil Rights*, Availability of remedy. *Practice, Civil*, Complaint. *Actionable Tort.*

A plaintiff need not allege "State action" in order to make out a claim for
relief against a private person under the civil rights statute, G. L. c. 12,
§ 11I. [181-182]

A complaint in a civil rights action under G. L. c. 12, § 11I, was sufficient to
withstand a motion to dismiss where the allegations permitted the infer-
ence that the defendants, residents of land abutting a parcel on which
the plaintiffs were constructing a tennis court, had opposed the construc-
tion by engaging in a joint venture with the goal of interfering with the
plaintiffs' property rights. [182-184]

A civil rights claim under 42 U.S.C. § 1985(3) (1982) was properly dis-
missed where the plaintiffs' allegations allowed no inference that the
defendants, in interfering with the construction of a tennis court on the
plaintiffs' property, had been motivated by a class-based discriminatory
animus. [184]

CIVIL ACTION commenced in the Superior Court Department
on April 1, 1983.

A motion to dismiss was heard by *William G. Young*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Daniel F. Featherston, Jr.* (*Susan S. Riedel* with him) for
the plaintiffs.

*Marc K. Temin* (*Michael B. Keating* with him) for the de-
fendants.

*Marjorie Heins, Robert P. Sherman, Victor D. Del Vecchio
& Shelagh A. Ellman*, for Civil Liberties Union of Mas-
sachusetts & another, amici curiae, submitted a brief.

---

[1] Diana M. Bell.

[2] Marilyn Mazza, David L. Weltman, Lois Weltman, Carl A. Hurtig,
and Martha Hurtig.

NOLAN, J. The plaintiffs, Lowry M. Bell, Jr., and Diana M. Bell, appeal from an order of a Superior Court judge which dismissed their complaint for failure to state a claim under G. L. c. 12, § 11I, and 42 U.S.C. § 1985(3) (1982). The plaintiffs alleged that certain actions of the defendants, interfered with and denied the plaintiffs' rights secured by the Constitutions of the United States and the Commonwealth of Massachusetts by threats, intimidation or coercion in violation of G. L. c. 12, § 11I.[3] The plaintiffs further allege that the defendants, in a conspiracy, acted with invidious and discriminatory animus to deprive the plaintiffs, solely because of their membership in a recognizable class, of rights guaranteed by the Constitution of the United States in violation of 42 U.S.C. § 1985.

On defendants' motion to dismiss, a Superior Court judge dismissed count one of the complaint, ruling that "[t]here is no violation of [G. L. c. 12, §§ 11H and 11I] here as the plaintiffs complain of no interference by state action or class

---

[3] General Laws c. 12, § 11H, as amended by St. 1982, c. 634, § 4, provides: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business."

General Laws c. 12, § 11I, as appearing in St. 1979, c. 801, § 1 provides: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court."

based animus with rights secured by the constitutions of either the United States or the Commonwealth, nor do they complain of any infringement of rights secured by any statutory enactment." The judge dismissed count two of the complaint, ruling that the plaintiffs failed to allege a "conspiracy . . . motivated by class-based invidiously discriminatory animus" as required by 42 U.S.C. § 1985(3). We allowed the plaintiffs' application for direct appellate review. G. L. c. 211A, § 10(A). For the reasons stated in this opinion, we reverse that portion of the judgment dismissing count one under G. L. c. 12, § 11I, and affirm that portion of the judgment dismissing count two under 42 U.S.C. § 1985(3).

On appeal, the plaintiffs argue that the rights asserted are secured by the Constitutions of the Commonwealth and United States against individual as well as State action. More specifically, the plaintiffs argue violation of their rights under arts. 1, 10, and 12 of the Declaration of Rights to the Constitution of the Commonwealth. In *Brett* v. *Building Comm'r of Brookline*, 250 Mass. 73, 77 (1924), the court said: "The right to enjoy life and liberty and to acquire, possess and protect property are secured to every one under the Constitution of Massachusetts and under the Constitution of the United States. These guaranties include the right to own land and *to use and improve it according to the owner's conceptions of pleasure, comfort or profit, and the exercise of liberty and the pursuit of happiness*" (emphasis supplied). In a word, the plaintiffs argue that the defendants' conduct "by threats, intimidation or coercion" interfered with their right to use and improve their property by construction of a tennis court.[4]

Moreover, the plaintiffs adopt the argument of the amici curiae that G. L. c. 12, § 11I, authorizes a civil action against a private person regardless of whether State action is present.[5] The defendants counter that the rights the plaintiffs assert are

---

[4] We see no merit in the plaintiffs' arguments founded on equal protection.

[5] We gratefully acknowledge the brief of amici curiae filed jointly by the Civil Liberties Union of Massachusetts and Lawyers' Committee for Civil Rights Under Law, of the Boston Bar Association.

not secured against individual action and that G. L. c. 12, § 11I, does not authorize a civil action against private persons where the asserted right is secured only against State action. Alternatively, the defendants argue that their acts did not constitute "threats, intimidation or coercion" under G. L. c. 12, §§ 11H and 11I.

We briefly summarize the allegations contained in the complaint. The plaintiffs owned a parcel of land in an affluent neighborhood known as Rice Island in the coastal area of Cohasset. In late 1979, they considered the construction of a tennis court on their property. Upon the plaintiffs' inquiry in February, 1980, the Cohasset building inspector (inspector) informed the plaintiffs that a building permit was necessary for a fence around the proposed tennis court and that no zoning problems existed regarding the tennis court construction. On March 5, 1980, the inspector issued the plaintiffs a building permit subject to the approval of the Cohasset conservation commission (commission). After the commission's approval, the plaintiffs encountered several construction problems which precluded use of the proposed site. Therefore, they decided to construct the tennis court on a triangular section of land in front of their home.

The defendants Peter J. and Marilyn Mazza, joint owners of abutting land, became aware of the plaintiffs' intention to build a tennis court. On March 30, 1980, Peter Mazza told the plaintiffs that he and his wife objected to the construction of the tennis court because of an expected increase in traffic and noise as well as concern over incursions into the wetlands. Peter Mazza offered to purchase the land where the plaintiffs planned to build. Failing that, he stated "that he had 'connections' and would do 'anything,' 'at any cost,' to prevent the [plaintiffs'] construction of any tennis court." Later the same day, the plaintiffs' general contractor began to demarcate the construction site. These defendants then pursued several steps, either personally or through an attorney, to question the legality of the plaintiffs' proposed construction.

On April 14, 1980, the defendant David L. Weltman wrote the plaintiffs a letter objecting to the proposed tennis court con-

struction. This letter informed the plaintiffs that certain considerations caused the formation of an association which included all the defendants.[6] The Weltmans were summer residents of property, owned by Mr. Weltman's mother, which abuts the plaintiffs' property at its front corner. The Hurtigs are residents and joint owners of property which abuts the Mazzas' property. The association sought to prevent construction of the tennis court asserting that it would violate the Cohasset zoning by-law.

A series of the plaintiffs' other allegations concern the defendants' pursuit of their legal position that the proposed tennis court violated the Cohasset zoning by-law. This battle culminated in the decision of *Bell* v. *Zoning Bd. of Appeals of Cohasset*, 14 Mass. App. Ct. 97 (1982), on June 30, 1982. The Appeals Court, affirming the Superior Court, determined that the plaintiffs were entitled to construct the tennis court as proposed. *Id.* at 105. The tennis court had been completed prior to that decision. *Id.* at 98.

During the period from March, 1980, through August, 1982, the defendants pursued various political and legal methods to prevent construction of the proposed tennis court. Several incidents occurred during this period. The defendant Peter Mazza threatened to sue the plaintiffs' blasting contractor in early May, 1980. The Mazzas attempted to induce the electric company to discontinue electric service to the plaintiffs and at one point physically blocked Diana Bell's passage, responding to her greeting with several intemperate epithets. Sometime late in May, 1980, the building inspector called the Cohasset police to remove Peter Mazza from the inspector's office when Mazza refused to leave during a dispute concerning the tennis court construction. Several times during the ongoing antagonism, the Mazzas called the police and fire departments concerning the plaintiffs' actions in constructing the tennis court.

---

[6] George Rowland Crampton and Barbara C. Crampton were originally defendants in this action. The claims against them were dismissed by a stipulation of dismissal entered July 8, 1983.

1. *G. L. c. 12, §§ 11H and 11I.*

*a. State action.* We recently stated that "the protections of constitutional rights introduced in the Massachusetts Civil Rights Act may *not* be limited to State action. See G. L. c. 12, § 11H; G. L. c. 265, § 37 ('whether or not acting under the color of law')." *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination*, 391 Mass. 594, 609 n.9 (1984) (emphasis in original). The judge recognized this proposition. The judge, however, apparently avoided the application of the statute to private action by restrictively interpreting the phrase "rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth . . . ." G. L. c. 12, § 11I. The judge ruled that, where the constitutional right asserted requires State action to implicate a violation, absent State action, the plaintiffs do not have a secured right to assert under G. L. c. 12, § 11I. The judge ruled that the rights asserted by the plaintiff were only secured against State action. Therefore, the plaintiffs failed to state a cause of action under G. L. c. 12, § 11I.

In *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819 (1985) (*Batchelder II*), we had the opportunity to examine the legislative history of G. L. c. 12, §§ 11H and 11I. Based on this examination, we concluded that "[t]he Legislature enacted G. L. c. 12, §§ 11H and 11I, to provide a State remedy for deprivations of civil rights. The statute extended beyond the limits of its Federal counterpart by incorporating private action within its bounds. We conclude that the Legislature intended to provide a remedy under G. L. c. 12, § 11I, coextensive with 42 U.S.C. § 1983 (Supp. V 1981), except that the Federal statute requires State action whereas its State counterpart does not." *Batchelder II, supra* at 822-823.

The Legislature at least intended to incorporate a proscription on private acts in deprivation of secured constitutional rights.[7]

---

[7] We need not go beyond considering violation of a constitutional right in this case because the plaintiff does not assert violation of rights secured by any other "laws of the commonwealth." G. L. c. 12, § 11I.

This clear intent cannot be inhibited by a restrictive interpretation of one phrase. Rather, G. L. c. 12, §§ 11H and 11I, like other civil rights statutes, are "entitled to liberal construction of [their] terms." *Batchelder II, supra* at 822. We decline to embrace the judge's definition of secured right which he adopted from our definition of that term in a contract dispute. See *Rosegartin* v. *Cohen*, 258 Mass. 534, 536 (1927). We prefer Justice Brennan's definition of that term as it appears in an analogous Federal statute. "[A] right can be deemed 'secured . . . by the Constitution or laws of the United States,' . . . even though only governmental interferences with the exercise of the right are prohibited by the Constitution itself (or another federal law). The term 'secured' means 'created by, arising under or dependent upon,' *Logan* v. *United States*, 144 U.S. 263, 293 [1892], rather than 'fully protected.' A right is 'secured . . . by the Constitution' . . . if it emanates from the Constitution, if it finds its source in the Constitution." *United States* v. *Guest*, 383 U.S. 745, 778-779 (1966) (Brennan, J., concurring). Our adoption of this definition for the purposes of G. L. c. 12, § 11I, provides a remedy commensurate with the scope intended by the Legislature.

The phrase "whether or not acting under color of law" is understood to mean whether or not State action is present. See *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 928 (1982). Our interpretation of "rights secured" prevents rendering this phrase superfluous and results in "a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967), quoting *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). The plaintiff need not allege "State action" to state a cause of action under G. L. c. 12, § 11I.

b. *Threats, intimidation or coercion.* The interpretation of G. L. c. 12, § 11I, that we adopt today does not result in creating a vast constitutional tort. The Legislature explicitly limited this remedy to situations where the derogation of secured rights occurs by "threats, intimidation or coercion." G. L.

c. 12, § 11H. In moving to dismiss the complaint, the defendants, recognizing this limitation, asserted that the plaintiffs failed to allege that the defendants interfered, or attempted to interfere, by threats, intimidation, or coercion with the exercise or enjoyment of plaintiffs' secured rights. The judge did not analyze the allegations concerning interference. We conclude that the allegations in the complaint were sufficient to withstand a motion to dismiss.

" 'In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). A complaint should not be dismissed merely because it suggests a novel legal theory of recovery. See 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 602-603 (1969). The above stated standard is determinative of the sufficiency of this complaint.

The defendants assert that the plaintiffs' allegations merely recount the defendants' pursuit of their legal rights and recite impolite conduct on the defendants' part. We disagree with the defendants' interpretation of the allegations. See *Nader, supra.* It is important to note, however, that allegations which merely indicate that a defendant petitioned for the redress of grievances, absent extraordinary circumstances, are not sufficient to state a claim under G. L. c. 12, § 11I. See *Gorman Towers, Inc.* v. *Bogoslavsky*, 626 F.2d 607, 614-615 (8th Cir. 1980). Cf. *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508, 512-513 (1972). The plaintiffs' allegations do not concern solely the defendants' pursuit of legal rights. It is alleged that in March, 1980, the defendant Peter Mazza threatened to do anything at any cost to prevent the plaintiffs' construction of the tennis court. The plaintiffs alleged that shortly after this threat they received a letter which stated all

the defendants had joined in an association to prevent the plaintiffs from constructing the tennis court. We need not repeat the Mazzas' alleged acts after formation of this association, described earlier in the opinion, which may have exceeded impoliteness and may constitute "threats, intimidation or coercion." From these allegations, it could be inferred that the defendants engaged in a joint venture with the goal of interfering with the plaintiffs' property rights. As joint venturers, "each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest." W.L. Prosser & W.P. Keeton, Torts § 72, at 517 (5th ed. 1984). See *Caron* v. *Lynn Sand & Stone Co.*, 270 Mass. 340, 346 (1930). The plaintiffs sufficiently alleged threats, intimidation, or coercion in their complaint.

In deciding that the plaintiffs have sufficiently stated a claim under G. L. c. 12, § 11I, we do not express any opinion on the merits of that claim. The plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim. See *United States* v. *Thurston County*, 54 F. Supp. 201, 204-205 (D. Neb. 1944), aff'd, 149 F.2d 485 (8th Cir.), cert. denied, 326 U.S. 744 (1945). The defendants retain the right to challenge this claim on a motion for summary judgment, see *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 899 (1983), and to require proof of all necessary allegations at trial.

2. *42 U.S.C. § 1985(3).*

The judge dismissed that portion of the complaint which alleged a claim under 42 U.S.C. § 1985(3) because the plaintiff failed to allege an essential element of that claim. An allegation of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" is an essential element of a 42 U.S.C. § 1985(3) claim. *Griffin* v. *Breckenridge*, 403 U.S. 88, 102 (1971). Reading the allegations in a light most favorable to the plaintiffs, we cannot infer that the defendants formed a conspiracy which was motivated by a class-based, invidiously discriminatory animus. See *Bricker* v. *Crane*, 468 F.2d 1228, 1232-1233 (1st Cir. 1972), cert. denied, 410 U.S. 930 (1973). This portion of the complaint was properly dismissed.

3. *Failure to join a party.*

As additional grounds for their motion to dismiss, the defendants asserted that the plaintiffs failed to join the town of Cohasset as a necessary party for just adjudication of this action. See Mass. R. Civ. P. 12 (b)(7), 365 Mass. 754 (1974); Mass. R. Civ. P. 19, 365 Mass. 765 (1974). The judge did not rule on this ground. Neither party argued this issue in the briefs. The record does not contain sufficient material from which we could rule on this matter. See *Schank* v. *Hebert Mach. Co.*, 5 Mass. App. Ct. 220, 223 (1977). Therefore, we leave to the Superior Court the determination whether the town of Cohasset is a necessary party.

We reverse the portion of the judgment dismissing count one of the complaint and remand this case to the Superior Court for further proceedings consistent with this opinion. We affirm the portion of the judgment dismissing count two.

*So ordered.*