Bohn, J.
INTRODUCTION
On August 12, 2004, the plaintiff, James D. Lowenstern (“Lowenstern”), filed a six-count complaint against the defendant, The Alyce Fisher Intervivos Trust (the “Trust”). The complaint alleges breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), promissoiy estoppel (Count III), constructive trust over the excess proceeds (Count IV), lis pendens (CountV) and injunctive relief (Count VI). On August 12, 2004, upon determining that the subject matter of the action constituted a claim of right to title to real property, Justice Stephen E. Neel of the Superior Court allowed the plaintiffs request for lis pendens.
On September 14, 2004, the defendant filed a motion to dismiss all counts pursuant to Mass.R.Civ.P. Rule 12(b)(6) for failure to state a claim upon which relief may be granted and to dissolve lis pendens. In support of its motion, the defendant argues that the allegations of the complaint are facially deficient and do not state a cause of action because (1) there was no writing signed by the parties, thereby making any alleged agreement unenforceable under the Statute of Frauds; (2) the complaint fails to recite all material terms; and (3) any reliance by the plaintiff on promises allegedly made by John Bovarnick (“John" or the “Trustee”) is unreasonable as a matter of law given the plaintiffs status as the President of a real estate brokerage firm and his admission that he prepared a written offer to purchase that Bovarnick never signed.
The plaintiff filed an opposition to the defendant’s motion contending that (1) the plaintiff relied on the defendant’s oral promise to his detriment, which serves as an estoppel exception to the statute of frauds; (2) reliance on Bovamick’s oral promises was reasonable regardless of plaintiffs expertise; and (3) the written offer, which was presented but not executed, does not affect the validiiy of the oral agreement.
After a hearing and for the reasons stated below, the defendant’s motion to dismiss and dissolve lis pendens will be ALLOWED.
BACKGROUND
When deciding a motion to dismiss under Rule 12(b)(6), the court must accept the allegations of the complaint as true and draw any inferences in favor of the plaintiff. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). As such, the facts are as follows.
The plaintiff is a licensed real estate broker and is the President and sole shareholder of Castles Unlimited, Inc. (“Castles”). The defendant is the owner of a two-family house located at 179 Allerton Road in Newton, Massachusetts (the “Property”). The grantor of the Trust, Alyce Fisher, was the grandmother of the Trust’s current beneficiaries — John, Jeff and Jay Bovarnick and their sister, Robin Rothkopf.
Beginning in or around 1987, the Trustee engaged Castles on several occasions to represent him and/or the Trust in the sale of certain properties. Since this initial engagement until the events of the present dispute, the plaintiff and the Trustee maintained a close business relationship.
On or about January 27, 1996, the defendant engaged Castles as the agent to sell the Property pursuant to a listing agreement. Ultimately, the Property was not sold pursuant to such an agreement. In or around March of 2002, the defendant engaged Castles for a second time as agent to attempt to sell the Property pursuant to a new listing agreement with a $739,000 list price and a five percent broker’s fee. The plaintiff and Bovarnick as Trustee signed the listing agreement.
*538 On or about April 13, 2002, the listing price of the Property was reduced to $719,000. On June 17, 2002, Jay Bovarnick wrote a letter to the plaintiff stating that the listing agreement had expired and would not be renewed and requested that the plaintiff remove the “For Sale” sign from the Property and return the keys. Upon receipt of this letter the plaintiff contacted the Trustee, John Bovarnick, who instructed the plaintiff to ignore the letter and reassured him that the Trust still wanted to sell the Property.
On or about April 11, 2003, Castles procured an offer for the Property from a prospective buyer in the full amount of the listing price. While communicating the prospective buyer’s offer to the Trustee, the plaintiff made an oral offer to the Trustee to match the prospective buyer’s offer for the Property. The Trustee made the plaintiff a counteroffer, accepting plaintiffs offer subject to three conditions: (1) in order to reduce defendant’s transfer taxes on the sale, the purchase price would be offset by the five percent broker’s fee payable to Castles, leaving a net purchase price of $683,050; (2) the Trustee’s brother and ostensibly the Trust’s attorney — Jeff Bovarnick — would meet with John Bovarnick and the plaintiff to address any possible legal issues; and (3) the closing would occur when the defendant identified a substitute property or properties with which to effectuate a tax-free exchange for the Properly. The plaintiff verbally accepted the Trustee’s counteroffer (hereinafter referred to as the “Agreement”), was ready and willing to perform all of his obligations under the Agreement, and consequently changed the MLS listing of the Property from “active” to “under agreement.”
On or about April 14, 2003, in reliance on the defendant’s promise contained in the Agreement, the plaintiff did not act on an opportuniiy to purchase a two-family house in Newton that was comparable to the Property.
Shortly after the April 11, 2003 oral Agreement, the plaintiff met with the Trustee and Jeff Bovarnick. At the meeting, all parties acknowledged that the plaintiff should be the ultimate purchaser of the Properly. The Trustee gave the plaintiff a copy of the deed, an insurance binder and a copy of the lease for the first floor tenant. The plaintiff gave the Trustee a written offer in the amount of $719,000, with the sole contingency that the plaintiff be allowed to inspect the Property.[1] The Trustee did not sign the written offer. However, the plaintiff alleges that, by his words and conduct, the Trustee assured the plaintiff of the defendant’s intent to perform the Agreement. Also, in light of their close and enduring business relationship, the plaintiff was not concerned about the verbal nature of the Agreement.
Subsequent to this meeting and continuing for one year, the Trustee, through his words and conduct, gave the plaintiff repeated assurances of the defendant’s intent to perform under the agreement.[2]
In or around May 2004, Jeff Bovarnick informed the plaintiff that there was a problem getting all of the beneficiaries to agree on the sale of the Property to the plaintiff. Jeff Bovarnick then suggested that the plaintiff speak with the Trustee. The plaintiff phoned the Trustee, who promised to “get this done” and said he would call the plaintiff. The Trustee never called the plaintiff, nor did he return any of the plaintiffs calls. Thereafter, it became clear to the plaintiff that the defendant, through the actions of the authorized Trustee, had no intention of performing its obligations under the oral Agreement. Three months later, the plaintiff filed this civil action.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. Rule 12(b)(6), the court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn therefrom in the plaintiffs favor. Fairneny v. Sauogran Co., 422 Mass. 469, 470 (1996). The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nader v. Citron, 372 Mass. 96, 98 (1977). A complaint is not subject to dismissal if it would support relief on any theory of law. Whitinsville Plaza, Inc v. Kotseas, 378 Mass. 85, 89 (1979). A complaint need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim. Bell v. Mazza, 394 Mass. 176, 184 (1985).
Mass. Gen. Laws ch. 259, §1 states in pertinent part, “no action shall be brought [u]pon a contract for the sale of lands . . . (u)nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith ...” This applies in suits for specific performance. Witherington v. Eldredge, 264 Mass. 166, 175 (1928).
The purpose of the Statute of Frauds is to suppress fraud. Occasionally, however, there is a configuration of facts which greatly diminishes the risk of fraud and, to the contrary, creates risk of inequity if effect is not given to an unwritten agreement. Pappas Indus. Parks, Inc. v. Psarros, 24 Mass.App.Ct. 596, 598 (1987). Such is the case if a party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his or her position that injustice can be avoided only by compelled specific performance. Restatement (Second) of Contracts §129 (1981).
The “essential factors that give rise to the estoppel exception are (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the repre *539 sentation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and (3) detriment to such person as a consequence of the act or omission.” Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 728 (1974), citing Cleaveland. v. Malden Savings Bank, 291 Mass. 295, 297-98 (1935).
The plaintiff contends that the defendant “dangled plaintiff on a string” by (1) entering into the Agreement; (2) making repeated assurances to plaintiff with respect to the Agreement for over one year; and then (3) repudiating the Agreement.[3]
In Pappas Indus. Parks, Inc., supra, the court described the dangling on a string theory by offering the following examples: (1) a plaintiff was repeatedly assured that a deal had been made — indeed that he was bound by it — and only a bureaucratic formality was still to be attended to; (2) a supplier of movable metal partitions left uncorrected for more than two months a price given to a contractor for purposes of enabling the latter to make a bid on a general contract; (3) a landlord submitted a lease to a prospective tenant and then, through acts and representations, strung the tenant along for more than four months before repudiating the lease which he had submitted. Pappas Indus. Parks, Inc. at 598, citing the following cases respectively Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 725-28 (1974); Loranger Const. Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 154-59 (1978); Greenstein v. Flatley, 19 Mass.App.Ct 351, 352-54 (1985).
The plaintiff suggests that the facts of this case are most similar to the court’s first example. This court disagrees. While the plaintiff may have been assured repeatedly of a deal, a reasonable person would have found such assurances to be meaningless because the third condition of the Agreement remained unmet and the defendant had not signed the Agreement. These remaining formalities were not merely bureaucratic as the plaintiff suggests; rather, they are essential to legitimizing and finalizing the sale of the Property to the plaintiff. Without satisfaction of the third condition and execution of the Agreement, the plaintiff was not justified in his reliance on the defendant’s performance of the Agreement nor was he “dangling on a string” for one year.[4] As a result this is not a proper set of circumstances for application of the estoppel exception and the defendant is not estopped from asserting the affirmative defense of the Statute of Frauds.
Due to the fact that the parties’ oral Agreement to buy and sell real property was not reduced to writing, signed or unsigned, the Agreement is deemed unenforceable under the Statute of Frauds. Mass. Gen. Laws ch. 259, §1; Witherington v. Eldredge, 264 Mass. 166, 175 (1928).
ORDER
For the reasons stated above, it is hereby ORDERED that the defendant’s motion to dismiss is ALLOWED.
Furthermore, for the reasons stated above, the lis pendens authorized by this court is dissolved.

The plaintiff alleges that the written offer was a mere formality and he did not expect that Bovamick would countersign the offer because of the third condition of the Agreement that the closing occur when the defendant identified a substitute exchange property, a condition which was not yet satisfied. Immediately after the meeting and continuing for eight months, the plaintiff provided Bovamick with information regarding numerous potential tax-free exchange opportunities in Massachusetts. The plaintiff alleges that Bovamick told him that he was “too busy with a certain development project to focus on the exchange property.” See Plaintiff Verified Complaint, page 7.

In its Verified Complaint, the plaintiff discusses, at length, each instance of the defendant’s repeated assurances to perform under the Agreement. For the sake of brevity, the court lists these instances of assurance:
(1) Eight months after the meeting, Bovamick unequivocally assured the plaintiff of defendant’s intent to perform under the Agreement, but claimed he was too busy with a certain development project to focus on the exchange property, which represented the third condition of the Agreement.
(2) The plaintiff, expecting to occupy the first floor of the Properly, did not consent to Bovarnick’s request to renew the current tenant’s lease. The tenant moved out of the Property and Bovamick engaged Castles to procure a tenant on a month-to-month basis.
(3) On April 19, 2004, after the death of the second-floor tenant Bovamick engaged Castles as agent to lease the Property. The plaintiff, believing that he and the prospective tenants would soon be neighbors, informed Bovamick that he did not find these tenants to be a good match with his lifestyle and Bovamick agreed.

In its Verified Complaint, the plaintiff alleges that “[o]n or about April 11, 2003, the defendant, through the Trustee, made plaintiff a verbal counteroffer, accepting plaintiffs own offer but subject to three minor conditions:... (3) the closing would occur when defendant identified a substitute property or properties with which to effectuate a tax-free exchange for the Property.” (Emphasis added.) The Complaint further alleges that “[fimmediately after the Meeting and continuing for approximately eight months thereafter, plaintiff provided the Trustee with information regarding numerous potential exchange opportunities in Massachusetts . . . (the Trusted claimed to be too busy to focus on the exchange property.” As evidenced above, the plaintiff admits that the third condition of the verbal Agreement was not met; therefore, any reliance on the plaintiffs part was patently unreasonable and he cannot claim to have been “dangled on a string.”

It is also noteworthy that the plaintiff is the President of a real estate brokerage firm. Pappas held that an essential element in the cases where the principle of estoppel has been applied is that the party to whom, through word or act, representations had been made reasonably relied on those representations. 24 Mass.App.Ct. 596, 598 (1987) (emphasis added). In that case, the proposed transaction at issue was a commercial real estate transaction involving persons who were both experienced in real estate deals. In this case, the plaintiff, as President and sole shareholder of a real estate brokerage firm, surely is experienced in real estate transactions and the defendant, who is described in the plaintiffs Complaint as being “in the business of owning, developing and managing real estate in Massachusetts” also can be *540 presumed to be experienced in real estate deals. In light of these facts, the plaintiff was not reasonable in relying on an unexecuted oral agreement to purchase real property. Id. (. . . the circumstances [are] such that a reasonable businessman would be aware that the negotiations were inchoate and that no presumed agreement could be relied upon).