Hines, J.

INTRODUCTION

The plaintiff, Avelino Mateo (Mateo), is the administrator of the estate of Don Christian Ong Mateo who died tragically in an automobile accident that occurred when he was a passenger in an automobile driven by the defendant Romeo Santos. Santos is alleged to have been seriously impaired by alcohol at the time of the accident. The plaintiff filed this wrongful death action against Santos and the other defendants asserting various theories of negligence, including negligence in allowing Santos to consume alcohol on their premises. The Horth defendants, Cervantes and Mickey’s Billiards filed motions to dismiss plaintiffs’ complaint on the ground that the Complaint fails to state a claim upon which relief can be granted. After a hearing, this court summarily denied the motions. At the suggestion of the court, however, each of the defendants filed a motion for reconsideration of the order denying the motions to dismiss. After a a second hearing and reconsideration of the parties’ respective positions, the motions to dismiss are ALLOWED.

BACKGROUND

On a motion to dismiss for failure to state a claim upon which relief can be granted, the analysis begins with the allegations of the complaint which are summarized as follows. The accident which took the life of the decedent occurred in the early morning hours of March 4, 2001. In the hours preceding the accident, Santos, then aged nineteen, was a guest in the home of the defendants Remedios Horth, Howard Horth and Brian Cervantes who all lived together in Brockton. While at the Horth and Cervantes home, Santos consumed alcohol to the point of intoxication. Neither of the Horths nor Cervantes, however, served alcohol to Santos that evening.
At some point during the evening, despite his impaired condition, Santos got into his vehicle and traveled to Oseo Plaza in Holbrook where he visited an establishment known as Mickey’s Billiards. Oseo Plaza is owned and managed by the defendant Highland Trust. While in the Oseo Plaza parking lot, Santos and the decedent continued to consume alcohol that they had brought with them. None of the staff at Mickey’s Billiards served or furnished alcohol to Santos. Sometime around 2:30 a.m. after a long night of drinking alcohol, Santos then drove Mateo back to the Horth and Cervantes home where he consumed even more alcohol until the early morning hours of March 4, 2001. At approximately 4:30 a.m., Santos got into his vehicle with the decedent in the front passenger seat. Seriously impaired by the alcohol, Santos lost control of the vehicle and collided with a fence and tree on the side of the road, causing fatal injuries to Mateo.

DISCUSSION

For purposes of a motion to dismiss a complaint under Mass.R.Civ.P. 12(b)(6), the allegations in the complaint must be treated as true and are entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). A motion to dismiss should only be granted if it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. Id. The standard is “exceedingly liberal” and “these generous and indulgent criteria have reduced a plaintiffs obstacle in surmounting a rule 12(b)(6) motion to dismiss for failure to state a claim to a minimal hurdle.” Brum v. Town of Dartmouth, 44 Mass.App.Ct. 318, 321 (1998), citing Bell v. Mazza, 394 Mass. 176, 183 (1985). Therefore, Mateo need only present a complaint that does no more than “sketch the bare silhouette of a cause of action.” Id. at 322, citing Coolidge Bank & Trust Co. v. First Ipswich Co., 9 Mass.App.Ct. 369, 371 (1980). If the plaintiff meets this burden, the complaint will not be dismissed on this ground.
A. Mickey’s Billiards’ Motion to Dismiss
In his complaint, the plaintiff alleges that Mickey’s Billiards was negligent in: “(1) failing to exercise its right to control the consumption of alcohol by underage individuals on the premises; (2) failing to maintain the premises in a reasonably safe condition; (3) failing to provide adequate security on the premises; (4) failing to exercise reasonable care to protect the plaintiffs decedent from harm; (5) other ways to be shown at the trial of this matter.” Mickey’s Billiards argues that the complaint fails to state a claim upon which relief can be granted in the absence of allegations that it served or furnished alcohol to Santos because under Massachusetts law, no duty of care
*153 Mass. 266, 269 (1972) (second alteration in original), quoting Riñes v. Justices of the Superior Court, 330 Mass. 368, 373 (1970). In a case analogous to the instant one, the Supreme Judicial Court held that mandamus was the proper relief when the plaintiff is seeking issuance of a permit that has been constructively granted. Kay-Vee Realty Co. v. Town Clerk of Ludlow, 355 Mass. 165, 169 (1969).
General Laws c. Ill, §3IE regulates the issuance of permits related to sewage disposal systems. That statute states in relevant part:
Any health officer or board of health for any city, town, or district, whose authority includes the issuance of permits for construction, maintenance or alteration of individual sewage disposal systems for residential buildings of not more than four dwelling units, shall act upon a completed application for such permit to construct, maintain, or alter such system within forty-five days from the date upon which such completed application is filed with said health officer or board of health. If a determination on a completed application is not rendered within forty-jive days by the appropriate health officer or board of health, then said permit shall be deemed to have been granted. (Emphasis added.)
For the purpose of this section, a completed application shall include, but not be limited to, information satisfactory to any local board of health regarding the number of deep observation holes, all percolation test results and a plan which meets the requirements of the state sanitary code and any local health regulations. Such application shall be considered filed on the date upon which a completed application is presented by the person who is seeking the permit, to the health officer, board of health or agent thereof.
For the purpose of this section, “action on a completed applicationshall mean approval of said application and issuance of the permit to construct, maintain, or alter, or disapproval of said application with a written statement of the reasons for such disapproval. The written statement of reasons, in the case of disapproval shall be sent to the applicant by first class mail, postage prepaid and shall include the information necessary in order to ascertain why the application or the proposed subsurface sewage disposal system or both fail to comply with local or state code requirements. (Emphasis added.)
“[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished.” Industrial Fin. Corp. v. State Tax Comm’n, 367 Mass. 360, 364 (1975). “When the use of the ordinary meaning of a term yields a workable result, there is no need to resort to extrinsic aids such as legislative history.” Bronstein v. Prudential Ins. Co., 390 Mass. 701, 704 (1984). “The language of the statute itself is [the] primary insight into legislative purpose.” Foss v. Commonwealth, 437 Mass. 584, 586 (2002).
The controversy in the instant case is founded upon statutory interpretation. The defendants argue that the requirement that the Board “act on a completed application” is not the same as the statutory mandate that, in order to avoid the required constructive grant of the permit, they make a “determination on a completed application ...” In other words, they argue that verbally voting on the Plaintiffs application was a “determination” of that application sufficient to avoid a constructive grant of it, even if they failed to “act” on the application by denying it in writing. The Court disagrees.
As stated, G.L.c. Ill, §3IE requires the Board to “act upon a completed application ... within forty-five days from the date upon which such completed application is filed ...” Id. The statute later explains that “act[ing]” means either “approval of said application and issuance of the permit... or disapproval of said application with a written statement of the reasons for such disapproval.” Id. Verbal notice of a denial is not one of the factors listed as “actfing]” on the application. If a Board or its agent failed to make a “determination on a completed application,” within the foriy-five day time allotment, the consequence is that the “permit shall be deemed to have been granted.” Id.
In analyzing the statute, the Court finds it persuasive that the statute directs a Board to “act on a completed application,” then uses the words “determination on a completed application” as a description of the action that must be taken to avoid the consequences of the failure meet the statutoiy directive for “act[ion].” The Legislature clearly described a requirement in the first sentence, then clearly described the consequences of not meeting that requirement in the next sentence. It seems unlikely that, in the same paragraph, the Legislature made the requirement for a Board to “act,” then set forth a consequence for failing to make a separate, unrelated “determination” in the very next sentence. Rather, the statute simply used the word “act” and “determination” interchangeably. The Court holds that a failure to make a “determination on a completed application” and the requirement that the Board “act on a completed application” both refer to the “act" required by the statute.
The defendants suggest that the forty-five-day requirement for filing a written statement of reasons is “directory, and not mandatory.” They rely upon Zuckerman v. Zoning Board of Appeals of Greenfield, 394 Mass. 663, 666 (1985) (under G.L.c. 40A, §15, the requirement that the Zoning Board of Appeals file its decisions within 14 days of making the decision contained no specific remedy, and therefore, the requirement was directory, and not mandatory). That case is *154 distinguishable from the present case. In the instant case, G.L.c. Ill, §31E does provide a specific remedy if the required action is not taken; the permit is “deemed to have been granted.” Id.
The Board in the instant case verbally voted to deny the application at the hearing of June 20, 2003. However, they did not render that decision in writing to the Plaintiff within the statutorily mandated forty-five day period. Thus, they did not “act upon the completed application” in the manner that the statute dictates. Consequentially, the Plaintiffs application must now be “deemed to have been granted” as the statute requires. The permit must issue.

RUUNG

For the foregoing reasons, the plaintiffs motion for summary judgment is ALLOWED, and the defendants’ cross motion for summary judgment is DENIED.
In light of the Court’s ruling on the cross motions for summary judgment, the defendants’ motion to dismiss is hereby DENIED.
The Court hereby enters the following ORDER:
On Count II of the plaintiffs complaint, the Court hereby declares that defendants have failed to comply with the requirements of G.L.c. Ill, §3 IE. The Court further declares that the construction permit has been constructively granted pursuant to the statute.
On Count II of the plaintiffs complaint, the Court hereby orders that the defendants issue the permit to the plaintiff forthwith.

Donna M. Lambert and Sean M. Leach, as they are now members of the Board of Health of the Town of Westport; and Ralph Urban, Sr., as Agent for the Town of Westport Board of Health.