PAUL POWERS, trustee,[1] *vs.* RICHARD LENO
(and a companion case[2]).

Essex.   March 26, 1987. — June 24, 1987.

Present: BROWN, DREBEN, & FINE, JJ.

*Abuse of Process. Unlawful Interference.*

At the trial of abuse of process claims by the prospective buyer and seller
of certain land subjecf to a purchase and sale agreement, the evidence
was sufficient to present a question for the jury whether the defendant,
an owner of abutting land, had had an ulterior, extortionate purpose at
the time he commenced litigation challenging the grant of a special
permit to the buyer. [383-384]
At the trial of unlawful interference claims by the prospective buyer and
seller of certain land subject to a purchase and sale agreement, the
evidence was sufficient to present a question for the jury whether the
defendant, an owner of abutting land, had attempted to delay or derail
performance of the plaintiffs' agreement by maliciously litigating the
grant of a special permit to the buyer. [384-385]

CIVIL ACTIONS commenced in the Superior Court Department
on January 18, 1984.

The cases were tried before *Peter F. Brady,* J.

*Mark B. Johnson* for the plaintiffs.

*Robert W. Deveau* for the defendant.

DREBEN, J. These actions were brought by the buyer and
seller of land under a purchase and sale agreement. The theories
of the complaints were abuse of process and interference with
contractual or advantageous relations. At the close of the plain-
tiffs' evidence, the defendant[3] filed motions for directed ver-

---

[1] Powers is trustee of Hardtcourt Manor Realty Trust, the buyer.

[2] John Warlick *vs.* Richard Leno. Warlick was the seller.

[3] The actions in the Superior Court were originally brought against two
defendants, Richard Leno and Daniel Abdulla. These appeals are only from

dicts under Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974). A judge of the Superior Court allowed the motions, and the plaintiffs appealed. We reverse.

We recite the evidence as construed most favorably to the plaintiffs. *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510, 514 (1974).[4] In August, 1982, the plaintiffs entered into an oral agreement, subsequently reduced to writing, for the purchase of land in North Andover abutting property owned by the defendant Leno. The buyer applied to the planning board of the town for a special permit to convert the buildings located on the property into condominiums. A special permit was granted on March 14, 1983.

Leno and Abdulla, see note 3 *supra,* appealed from the decision of the planning board to the Superior Court on April 4, 1983: summary judgment was entered against them on May 17, 1983. Although Leno and Abdulla appealed to this court, their counsel, on August 15, 1983, sought to withdraw because he had not been paid and because Leno and Abdulla had not responded to counsel's repeated efforts to discuss the case in order to prepare the appeal. A panel of this court allowed counsel's motion to withdraw, and a single justice of this court ordered Leno and Abdulla to post a $5,000 bond as a condition of continuing to prosecute the appeal. The appeal was dismissed in September, 1983, because Leno and Abdulla failed to post the bond.

At the end of August, shortly prior to that dismissal, the seller refused to grant the buyer another extension for the closing, and the deal was terminated. Because the special permit had been called in question by litigation, the buyer was not able to procure financing, and the sale did not go through.

The evidence most favorable to the plaintiffs came from the buyer. He testified that, "after the [zoning] appeals were pend-

the judgments in favor of Richard Leno. For this reason, we refer to the defendant in the singular in this opinion.

[4] While the evidence in favor of the plaintiffs is thin, it was sufficient to preclude directed verdicts. Regrettably, the judge did not follow the better procedure of allowing the matter to go to the jury "in any but a plain case." *Soares* v. *Lakeville Baseball Camp. Inc.*, 369 Mass. 974, 975 (1976). *Smith* v. *Ariens Co.*, 375 Mass. 620, 627 (1978).

ing in the Superior Court and the Appeals Court," he had a discussion with Leno in the presence of a real estate broker in which Leno stated that he wanted to purchase an elongated strip of the property, approximately one acre, for one dollar. When Leno heard that the owners were unwilling to sell, he stated, "This will be in court forever." An answer to an interrogatory[5] reported Leno as having said that he would get the hundred feet of land "for a buck. And if I don't get what I want, I'll make sure these condominiums are never built. I'll delay it in court forever, even if I have to spend one million dollars." The real estate broker also testified that Leno had wanted a strip of land conveyed to him at nominal or no cost. Leno admitted that he knew that filing the appeals would prevent the project from proceeding.

1. *Abuse of process.* Under Massachusetts law, "process" in the context of abuse of process "refers to the papers issued by a court to bring a party or property within its jurisdiction." *Jones* v. *Brockton Pub. Mkts., Inc.,* 369 Mass. 387, 390 (1975).[6] "To prevail on a cause of action for abuse of process, 'it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'" *Beecy* v. *Pucciarelli,* 387 Mass. 589, 595 (1982), quoting from *Quaranto* v. *Silverman,* 345 Mass. 423, 426 (1963). *Datacomm Interface, Inc.* v. *Computerworld, Inc.,* 396 Mass. 760, 775-776 (1986). See generally, *Board of Educ.* v. *Farmingdale Classroom Teachers Assn.,* 38 N.Y.2d 397 (1975).

While bad intentions alone are not enough to impose liability, "the case is otherwise where there is a 'form of coercion to obtain a collateral advantage, not properly involved in the

---

[5] No timely objection was taken to the reading of this answer to the jury.

[6] While G. L. c. 40A, § 17, as amended through St. 1985, c. 492, § 1, provides a statutory method of notification by the plaintiff instead of "the usual service of process," the statutory procedure is analogous to the "process" defined in *Jones* v. *Brockton Pub. Mkts., Inc.,* 369 Mass. at 390. Accordingly, we consider that the defendant's "appeal" under G. L. c. 40A, § 17, may qualify as the basis for an action for abuse of process.

proceeding itself, such as the surrender of property . . . .' "
*Cohen* v. *Hurley,* 20 Mass. App. Ct. 439, 442 (1985), quoting
from Prosser & Keeton, Torts § 121, at 898 (5th ed. 1984).
See *American Velodur Metal, Inc.* v. *Schinabeck,* 20 Mass.
App. Ct. 460, 469-470 (1985), cert. denied, 475 U.S. 1018
(1986). See also Restatement (Second) of Torts § 682 comment
b (1977) ("usual case of abuse of process is one of some form
of extortion, using the process to put pressure upon the other
to compel him . . . to take some . . . action"). We think the
evidence presented a jury question whether Leno had an ulterior
purpose in bringing the zoning action and was using it as a
form of extortion.

Even though Leno's statements about the strip of land oc-
curred after he had brought the action in the Superior Court,
it was open to the jury to infer from his later statements that
he had had an ulterior motive at the time he commenced the
action.[7] See *Datacomm Interface, Inc.* v. *Computerworld, Inc.,*
396 Mass. at 775. In deciding whether to draw any such infer-
ence, a jury may also consider the evidence that Leno did not
pursue his appeal in the zoning action once the seller had
terminated the transaction and Leno, therefore, could no longer
exert pressure on the buyer and the seller to convey the strip.

2. *Interference with an advantageous relationship.* "The
elements of the tort of interference with an advantageous re-

---

[7] The appeal to this court in the zoning case was taken within a short
period of time following the bringing of the action in the Superior Court
by Leno and Abdulla. It is, therefore, unlikely that Leno's intent differed
on the two dates, and we have no hesitation in ruling that at any new trial
the jury should be instructed that the relevant date for determining Leno's
state of mind under the abuse of process claim is the date on which he
brought his action in the Superior Court. See *Baya* v. *Revitz,* 345 So.2d
340, 341 (Fla. Dist. Ct. App. 1977). But see *Barquis* v. *Merchants Collec-
tion Assn.,* 7 Cal. 3d 94, 104 n.4 (1972) (where process construed broadly,
court recognized that under certain circumstances the taking of an appeal
might give rise to an abuse of process action). Our ruling is consistent with
the limited definition of "process" in the Massachusetts decisions, see *Jones*
v. *Brockton Pub. Mkts., Inc.,* 369 Mass. at 390, and cases cited, and
consistent with the policy that abuse of process cases ought not to be
encouraged. See *Cohen* v. *Hurley,* 20 Mass. App. Ct. at 443.

lationship that a plaintiff must prove are '(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's intentional and malicious interference with it; (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct.' " *Comey* v. *Hill,* 387 Mass. 11, 19 (1982), quoting from Nolan, Tort Law § 72, at 87 (1979). The fact that the contract was oral at the time the action was brought is not significant. The plaintiffs did not have to prove a binding contract. A "probable future business relationship from which there is a reasonable expectancy of financial benefit is enough." *Owen* v. *Williams,* 322 Mass. 356, 362 (1948). *Chemawa Country Golf, Inc.* v. *Wnuk,* 9 Mass. App. Ct. 506, 509-510 (1980).

We think it was for the jury to determine whether Leno intentionally interfered with the plaintiffs' relationship by maliciously bringing or continuing the litigation so as to delay and derail the agreement.[8] See Restatement (Second) of Torts, § 767, comment c (1979); see also *Grammenos* v. *Zolotas,* 356 Mass. 594, 597 (1970); *Pino* v. *Trans-Atlantic Marine, Inc.,* 358 Mass. 498, 504 (1970).[9]

3. *Validity of the trust.* Leno argues that the plaintiff trustee had no authority to bring this action because the trust is invalid. The record appendix, which does not contain the trust (or any other exhibits), is insufficient to permit our review of Leno's claim. Mass.R.A.P. 18(a), as amended, 399 Mass. 1217 (1987). *Connolly* v. *Connolly,* 400 Mass. 1002, 1003 (1987). *Kunen* v. *First Agricultural Natl. Bank,* 6 Mass. App. Ct. 684, 685-687, 691-692 (1978). *Iverson* v. *Board of Appeals of Dedham,* 14 Mass. App. Ct. 951 (1982).

The judgments are reversed and the cases are remanded for a new trial.

*So ordered.*

---

[8] Of course, the plaintiffs, if they should prove successful, may only have one recovery.

[9] For purposes of this opinion we need not discuss the tort of interference with contractual relations.