Henry, Bruce R., J.
INTRODUCTION
This matter is before the court on the motion of defendants, Gregg P. Lisciotti (“Lisciotti”) and Derby Farm, LLC (“Derby”), for summary judgment on plaintiffs complaint. In its amended complaint, the plaintiff, Three-A SAC Self-Storage, LP (“Self-Storage”), alleges abuse of process (Count I), civil rights violations under G.L.c. 12, §111, (Count II), and malicious prosecution (Count III). For the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
The court summarizes the relevant facts, which are taken from the summary judgment record, in the light most favorable to the nonmoving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982). Self-Storage is a Nevada limited liability partnership affiliated with U-Haul Corporation. Since 1995, Self-Storage has owned the property in Leominster known as 438 R Harvard Street (“Self-Storage’s Property”) and U-Haul affiliated corporations have used the property and its preexisting structures for “self-storage” facilities and truck rentals. Derby, a Leominster based limited liability company, owns the property (Derby’s Property) which abuts Self-Storage’s Property to the north and east. The defendant Lisciotti is the controlling principal of Derby.
The two parcels owned by Derby and Self-Storage were once under the common ownership of the Derby family. The property was bordered on the south by a railroad and by Harvard Street to the west. The Derby family farmed the land and an apple orchard occupied most of the property. The Derby farm also included a house, a chicken coop, and a barn (the “Barn”), which was located on the southwestern portion of the parcel. The Derby family used the Barn to store produce and farm equipment. To the north of the Bam, away from Harvard Street, was a steep hill leading to the Derby apple orchards. In part to avoid this hill, the family *614 used a private way over Self-Storage’s Property (the “Cart Road”) to travel between Harvard Street and the Barn.
On June 22, 1965, following an unrecorded plan prepared by Alden S. Marble & Associates (the “Marble Plan”), the Derby farm was partitioned into three parcels by its then owner, Aldea B. Derby (“Aldea”). According to the Marble Plan, Parcel 1 contained no structures, Parcel 2 included the Barn, and Parcel 3 (now Self-Storage’s Property), contained a chicken coop and the farmhouse. The Marble Plan shows part of the Cart Road starting approximately 125 feet from Harvard Street on Self-Storage’s Property and continuing past the eastern side of the Bam and over Parcel 2 where it borders with Parcel 3. As of October 7, 2007, the Cart Road was mostly paved from Harvard Street to the Barn.
On August 16, 1965, Aldea deeded a tract of land containing Parcels 1 and 2 (Derby’s Property) to Elmer S. Fitzgerald (“Fitzgerald”). However, she maintained possession of Self-Storage’s Property and lived in the farmhouse. From 1965 until 1986, the Fitzgerald family ran what had been the Derby farm, used the Cart Road to access the Bam from Harvard Street, and plowed the Cart Road in the winter. Aldea never asked the Fitzgeralds to stop using the Cart Road. In addition, Elmer and Ronald stated that, although they believed they had a legal right to use the Cart Road, they would have stopped doing so if asked by Aldea. Several years after acquiring the farm, the Fitzgeralds paved the area between the Barn and the property line with Self-Storage’s Property and, some years later, paved the Cart Road from Harvard Street to approximately seventy-five feet from the boundary with Self-Storage’s Property. From 1986 until 2000, the Fitzgeralds continued to use the Cart Road to access the Barn, although they no longer farmed their property. On April 22, 2000, the Derby Realty Tmst, controlled by the Fitzgeralds, leased Derby’s Property to the Carter Hill Development Corporation. On January 15, 2004, Derby purchased its properly. Aldea conveyed Self-Storage’s Property to Wayne A. Legacy by a deed dated September 26, 1984. On July 16, 2004, Self-Storage’s Property was deeded to Self-Storage by Nationwide Commercial Co. of Arizona, which had held the property for the U-Haul Corporation.
Derby demolished and removed the Barn shortly after acquiring its property. Derby then built drainage detention ponds in the orchards north of the Barn. This increased the slope of the hill to the north of the Bam and rendered access to the Barn area from the northerly portions of Derby’s Property impracticable. During this period, Derby and its contractors used the Cart Road to access the Barn area from Harvard Street in order to remove the demolished barn and to construct the drainage detention ponds.
From January 19, 1995 until January 8, 2001, when it was destroyed by fire, Self-Storage used the farmhouse as its place of business, renting personal storage space and trucks. From February 12, 2001 until December 27, 2004, Self-Storage used a temporary office trailer instead. The bankruptcy of U-Haul, Self-Storage’s parent company, temporarily delayed plans for a new building. However, in January 2005, Self-Storage reached an agreement with the City of Leominster to replace the temporary office trailer with a permanent structure. Subsequently, Self-Storage applied for a building permit. On June 7, 2005, the Leominster Planning Board (“the Planning Board”) held a hearing to consider Self-Storage’s site plan for the new building. The Planning Board approved Self-Storage’s site plan and the city issued a building permit.
On or before July 8, 2003, Lisciotti offered to purchase Self-Storage’s Property. Lisciotti remains interested in acquiring Self-Storage’s Property, and has communicated his interest to U-Haul employees. Prior to the Planning Board hearing, Lisciotti spoke with Thomas Casey (“Casey”), a Self-Storage employee responsible for the planned development. He told Casey that he needed to access the Bam area and asked for permission to cross Self-Storage’s Property. Casey refused, telling Lisciotti that there was no easement on Self-Storage’s Property. As a result, Lisciotti testified against the approval of Self-Storage’s site plan at the Planning Board hearing, claiming that the location of the proposed development would infringe on his right by prescriptive easement to use the Cart Road to access the Barn area. Lisciotti spoke with Casey after the public informational portion of the Planning Board hearing and offered to purchase Self-Storage’s Property. When Casey refused, Lisciotti threatened to sue Self-Storage based on his purported prescriptive easement right to use the Cart Road. Lisciotti also told Casey that Self-Storage’s building project would not go forward because he would assert his claimed prescriptive easement rights. The Planning Board hearing continued and Self-Storage’s site plan was approved. After the Planning Board hearing, Lisciotti and Casey again spoke outside of the City Hall. Lisciotti stated that Casey did not know what he was doing, and that Lisciotti would not allow the project to proceed. When Casey informed Lisciotti that the Planning Board had approved the site plan, Lisciotti replied that Casey obviously didn’t know who he was dealing with. Casey replied that Self-Storage would proceed with the project as planned and began to walk away. Lisciotti then called him a “fucking idiot.” Upon hearing this, Casey turned and asked Lisciotti what he had said, to which Lisciotti replied, “I didn’t say anything to you. I don’t even know you.”
On July 20, 2005, Derby filed an unverified complaint against Self-Storage in the Land Court, alleging an implied or prescriptive easement[2] to use the Cart Road over Self-Storage’s Property to access Derby’s Property.[3] On the same day, Derby moved for a preliminary injunction to prevent Self-Storage from build *615 ing on a portion of the Cart Road. On August 16, 2005, Derby’s motion was allowed based on its claim of a prescriptive easement to pass over the Cart Road. On September 13, 2005, Self-Storage moved to vacate the preliminary injunction. On September 29, 2005, the Land Court vacated the preliminary injunction, based on an agreement between parties which granted Derby temporary access to the Bam area via an alternative route across Self-Storage’s Property.
On May 1, 2006, Self-Storage filed a motion for summary judgment in the Land Court case. Attached to the motion were affidavits from Thomas Casey, Lynn Fleming, Elmer S. Fitzgerald, Jr. (“Elmer Affidavit 1”), Ronald H. Fitzgerald (“Ronald Affidavit 1”) and Fred A. Hamwey, Jr. On June 12, 2006, Derby filed a cross motion for summary judgment. Attached to this motion were affidavits from Gregg P. Lisciotti, Elmer S. Fitzgerald, Jr. (“Elmer Affidavit 2”), and Ronald H. Fitzgerald (“Ronald Affidavit 2”). When deposed, Lisciotti testified that he did not know whether the Fitzgeralds or any predecessor-in-title had used the Cart Road in the adverse manner required to establish a prescriptive easement. Lisciotti also testified that he and Derby had never used the claimed easement without permission. On October 1,2007, Judge Sands allowed Derby’s Cross-Motion for Summary Judgment in part, ruling that Derby had an easement by implication over Self-Storage’s Property. However, Judge Sands also held that the rights granted by the easement were “limited to accessing the [Bam] in connection with the agricultural use”[4] of Derby’s Property and that “the presumed intentions of the parties in 1965 did not contemplate use of the Cart Road in connection with a commercial subdivision on [Derby’s] property.” Plaintiffs Response to the Defendant’s Motion for Summary Judgment, Exhibit H, Derby Farm, LLC v. Three-A Sac Self-Storage Ltd Partnership (“Land Court Decision”), at 9.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). In deciding a motion for summary judgment, the court views the facts “in the light most favorable to [the non-moving party], taking all the facts set forth in its supporting affidavits as tme.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Mass.R.Civ.P. 56(c); see Madsen v. Erwin, 395 Mass. 715, 719 (1985). Godbout v. Cousens, 396 Mass. 254, 261 (1985).
In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Mass.R.Civ.P. 56(c); Community Nat'l Bank, 369 Mass. at 553. Summary judgment, where appropriate, may be entered against the moving party, or may be entered as to certain issues and not others which may present a genuine issue of material fact. Id. The non-moving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass 805, 809 (1991); Kourouvacilis, 410 Mass. at 716.
ABUSE OF PROCESS (Count I)
In Count I of its complaint, Self-Storage alleges that Lisciotti and Derby committed abuse of process by using the Land Court summons and the preliminary injunction to coerce Self-Storage into selling its property - or into transferring its rights therein - to Derby, and to hinder Self-Storage’s plans to develop its property. The tort of abuse of process requires proof that: “(1) ‘process’was used; (2) for an ulterior orillegitimate purpose; (3) resulting in damage.” Kelley v. Stop & Shop Cos., 26 Mass.App.Ct. 557, 558 (1988), quoting Datacomm Interface v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986). “[I]t is immaterial that the process was properly issued, [or] that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose . . . The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which liability is imposed . . .” Kelley, 26 Mass.App.Ct. at 558, quoting Restatement (Second) of Torts, §682 cmt. a (1977).
Process
Self-Storage claims that Derby and Lisciotti are liable for abuse of process relating to both the Land Court summons and the motion for a preliminary injunction, both of which were filed on July 20, 2005. The first element of an abuse of process claim is satisfied if a “process” was used that resulted in “papers issued by a court to bring a party or property within its jurisdiction.” Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 390 (1975). This element is therefore satisfied by “the process used to institute a civil action.” Id. at 390. However, in Jones, the Court explicitly refused to extend the definition of process to include injunctions. Id. at 389-90. As such, the motion for a preliminary injunction does not constitute “pro *616 cess” for the purposes of Self-Storage’s abuse of process claim. Therefore, only the summons constitutes “process” for the purpose of Self-Storage’s abuse of process claim.

Ulterior or Illegitimate Purpose

Self-Storage alleges that Derby and Lisciotti used the Land Court summons to accomplish one of three ulterior or illegitimate purposes. More specifically, Self-Storage claims that Derby and Lisciotti used the Land Court summons to: (1) coerce Self-Storage into selling its properly to Derby; or (2) coerce Self-Storage into granting Derby easement rights to access the Barn area over the Cart Road; or (3) to prevent or hinder Self-Storage’s construction of a new building on its property.
“To prevail on an abuse of process claim ‘it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.’ ” Datacomm Interface, Inc., 396 Mass. at 775, quoting Beecy v. Pucciarelli, 387 Mass. 589, 595 (1982). The existence of an ulterior purpose may be demonstrated by “showing a direct demand for collateral advantage; or it may be inferred from what is said or done about the process.” Ladd v. Polidoro, 424 Mass. 196, 198 (1997). As the Court of Appeals noted in Vittands, “even process that is obtained with probable cause and for a proper purpose does not necessarily preclude liability.” 49 Mass.App.Ct. at 407-08.
Self-Storage has presented sufficient evidence to create a triable issue of fact as to whether Derby and Lisciotti used the Land Court summons to try to coerce Self-Storage into selling its property or granting Derby an easement therein. Lisciotti stated at his deposition that he was interested in purchasing Self-Storage’s Property. An email from Srini Vasan, a U-Haul employee, to Lisciotti indicates that he had offered to do so as early as July 2003, well before the Planning Board hearing occurred or the Land Court summons was issued. Furthermore, as the Land Court noted, the construction of drainage detention ponds in the area to the north of the Bam made it impractical to access to the Bam area without passing over Self-Storage’s Property. Based on this evidence, a trier of fact could reasonably infer that Lisciotti’s desire to acquire title to Self-Storage’s Property, or an easement therein, increased after all other practical means of reaching the Barn area had disappeared. As Casey attests, Lisciotti offered to purchase Self-Storage’s Property at the Planning Board hearing and threatened to bring suit based on his purported prescriptive easement claim when his offer was refused. In addition, a fact finder could reasonably infer that the timing and context of Lisciotti’s alleged threat to sue, combined with evidence of his obvious need to access the Bam area, indicates that an “ulterior or illegitimate purpose” motivated his use of the Land Court summons, rather than a legitimate intent to litigate putative easement rights. Therefore, the evidence presented on summary judgment, combined with reasonable inferences, is sufficient to present a genuine issue of material fact as to whether Derby and Lisciotti used the Land Court summons to coerce Self-Storage into selling its property to Derby or into granting it easement rights therein.
The summary judgment record also contains sufficient evidence to create a triable issue of fact as to whether Derby and Lisciotti used the Land Court summons to prevent or hinder Self-Storage from developing its property. In his affidavit, Casey claims that Lisciotti opposed approval of Self-Storage’s site plan at the Planning Board, stating that Derby had a prescriptive easement over Self-Storage’s Property. Casey also attests that Lisciotti told him that Self-Storage’s building project would not go forward because Lisciotti would assert his purported easement. Furthermore, Casey claims that, when he informed Lisciotti that the Planning Board had approved the site plan, Lisciotti said that he was not going to let the project proceed. A jury could conclude from these statements that Lisciotti brought suit in the Land Court for the ulterior and illegitimate purpose of preventing or hindering Self-Storage from building on its property. See Powers v. Leno, 24 Mass.App.Ct. 381, 384 (1987) (a jury issue existed as to whether defendant’s statement evidenced an ulterior purpose, “if I don’t get what I want, I’ll make sure these condominiums are never built. I’ll delay it in court forever, even if I have to spend one million dollars”).
Therefore, the evidence before the court, viewed in the light most favorable to Self-Storage, is sufficient to create a genuine issue of material fact as to whether Derby and Lisciotti used the Land Court summons for ulterior and illegitimate purposes. Where Lisciotti and Derby’s true purpose for bringing suit in the Land Court is in dispute, summary judgment is inappropriate. Vittands, 49 Mass.App.Ct. at 408 (“[T]he neighbors’ true motivation for filing this action is in fact in dispute. In instances such as this, where state of mind is an essential element of the cause of action, summary judgment is disfavored.”).
As the summary judgment record sets forth a genuine issue of material fact as to whether Derby and Lisciotti’s use of the Land Court process was for ulterior or illegitimate purposes, the defendants’ motion for summary judgment is denied as to Self-Storage’s abuse of process claim (Count I).
G.L.c. 12, §1II, Civil Rights (Count II)
In Count II of its complaint, Self-Storage alleges that the defendants violated the Massachusetts Civil Rights Act (“MCRA”). The MCRA affords a private cause of action against persons who interfere, or try to interfere, by threats, intimidation, or coercion, with the rights granted to another by the laws or constitutions of the United States or the Commonwealth. *617 G.L.c. 12, §§11H-I. Specifically, Self-Storage contends that Derby and Lisciotti violated the MCRA by interfering or attempting to interfere with its exercise and enjoyment of property rights, which are secured by the Massachusetts Declaration of Rights. To prevail on its G.L.c. 12, §111 claim,Self-Storage “must prove that(l) [its] exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by ‘threats, intimidation or coercion.’ ” Haufler v. Zotos, 446 Mass. 489, 504 (2006), quoting Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989).
Numerous cases have found that a G.L.c. 12, §1II claim may be grounded upon the property rights Self-Storage seeks to vindicate here, and that actions such as those undertaken by Derby and Lisciotti may constitute an interference with those rights. See e.g. Bell v. Mazza, 394 Mass. 176, 178 (1985) (finding the right to “use and improve” land sufficient to support MCRA claim, and also finding an interference with this right where neighbors sought to block the construction of a tennis court on the plaintiffs property).
Consequently, the court’s analysis must focus on the third prong of the Haufler test to determine if there is a genuine issue of material fact as to whether Derby and Lisciotti interfered, or attempted to interfere, with Self-Storage’s rights by “threats, intimidation or coercion.” Haufler, 446 Mass. at 504. In this context, “a ‘threat’ consists of ‘the intentional exertion of pressure to make another fearful or apprehensive of injuiy or harm.’ ” Id. at 505, quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994). “ ‘Intimidation’ involves ‘putting in fear for the purpose of compelling or deterring conduct.’ ” Id., quoting Planned Parenthood League of Mass., Inc., 417 Mass. at 474. The Supreme Judicial Court has defined “coercion” as “ ‘the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.’ ” Haufler, 446 Mass. at 505, quoting Buster v. George W. Moore, Inc., 438 Mass. 635, 646 (2003).
However, “[w]ords reasonably understood to express an intention to use lawful means to block development ‘would not be a threat, intimidation, or coercion actionable under §1II.’ ” Haufler, 446 Mass. at 506, quoting Pheasant Ridge Assocs. Ltd. P’ship v. Burlington, 399 Mass. 771, 782 (1987). Courts apply an objective standard, asking whether a reasonable person in the plaintiffs circumstances would be “threatened, intimidated, or coerced” by the defendant’s conduct. See Planned Parenthood League of Massachusetts, Inc., 417 Mass. at 474-75 (1994).
I conclude that there is a genuine issue of material fact as to whether Lisciotti’s statements would constitute “threats, intimidation or coercion” to a reasonable person in Casey’s circumstances. In his affidavit, Casey attests that following the public informational portion of the Planning Board hearing, Lisciotti told him that Self-Storage’s planned development would not go forward. Casey maintains that after the Planning Board hearing, Lisciotti told Casey that he didn’t know what he was doing, and stated that he (Lisciotti) was not going to let the project proceed. Casey also claims that when he then told Lisciotti that Self-Storage’s site plan had been approved, Lisciotti replied that Casey “obviously did not know who [he] was dealing with.” A fact finder could conclude that Lisciotti’s remarks indicated that he possessed political or other powers which he would use to thwart Self-Storage’s planned development if his demands were not met. See Pheasant Ridge Assocs. Ltd P’ship, 399 Mass. at 781-82 (holding that statements made by selectmen that “they would take any action necessary to stop the development [under G.L.c. 40B, §§20-23]” might be interpreted to include a threat of physical eviction or harm and therefore required a finding of fact to determine whether actionable under G.L.c. 12, §111). This interpretation is reasonable in light of the aggressive tenor and insulting language Casey claims Lisciotti employed during their conversation.
Viewed in this way, Lisciotti’s alleged statements are similar to that made by the defendant in Bell, who said “that he had ‘connections’ and would do ‘anything,’ ‘at any cost,’ to prevent the [plaintiffs’] construction of any tennis court.” 394 Mass. at 179 (holding that plaintiff had stated a claim under G.L.c. 12, §111). Likewise, in Ayasli v. Armstrong, the defendant declared, after a set-back in her efforts to block construction on the plaintiffs land, “[t]his is not the end. We will do everything we can to stop this project.” 56 Mass.App.Ct. 740, 744 (2002) (holding that the statement, when combined with defendants’ persistent efforts to block plaintiffs plans for their land, created a jury question on plaintiffs G.L.c. 12, §111 claim). Therefore, in their totality, Lisciotti’s alleged statements and conduct create a genuine issue of material fact as to whether a reasonable person in Casey’s position would have felt threatened, coerced, or intimidated as required by G.L.c. 12, §111. Defendants’ motion for summary judgment as to Count II is therefore denied.[5]
MALICIOUS PROSECUTION (Count III)
In Count III of its complaint, Self-Storage alleges that Derby and Lisciotti used the Land Court summons for the improper purposes of preventing or delaying the development of Self-Storage’s Property and coercing Self-Storage into selling its property to Derby. “To prevail on a claim for malicious prosecution, a plaintiff must establish that he was damaged because the defendant commenced the original action without probable cause and with malice, and that the original action terminated in his favor.” Chervin v. *618 Travelers Insurance Company, 448 Mass. 95, 103 (2006). In Cheruin, the Supreme Judicial Court adopted the “improper purpose” formulation of Restatement (Second) of Torts §676 to replace the required element of “malice.” Id. at 110. “Improper purpose” exists where the defendant “ ‘institut(es) a civil proceeding when [it does] not believe [its] claim be to meritorious’ or [does] so to ‘forc[e] a settlement that has no relation to the merits of the claim.’ ” Chervin, 448 Mass. at 110, quoting Restatement (Second) of Torts, §676 cmt. c (1977).
The determination of probable cause in malicious prosecution cases becomes a question of law “when the facts are fully established or undisputed.” Bednarz v. Bednarz, 27 Mass.App.Ct. 668, 669, no. 1 (1989), quoting Keef v. Johnson, 304 Mass. 572, 577 (1939). “[T]his rule apparently has the practical effect of requiring the judge to decide the issue of probable cause, even though the evidence, viewed under the usual directed verdict standard, is sufficient to permit the jury to decide the issue.” Bednarz, 97 Mass.App.Ct. 674 n.1, quoting Carroll v. Gillespie, 14 Mass.App.Ct. 12, 18 n.10 (1982).
For the element of probable cause, “less in the way of grounds for belief will be required to justify a reasonable man in bringing a civil rather then a criminal [proceeding].” Hubbard v. Beatty & Hyde, Inc., 343 Mass. 258, 261 (1961), quoting Prosser on Torts (2d ed.), p. 665. “All that is necessary, where civil proceedings are involved, is that the ‘claimant reasonably believed that there [was] a chance that his claim [may have been] held valid upon adjudication.’ ” Id. at 262, quoting Restatement (Second) of Torts, §676 cmt. e (1977). “In determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a sound chance that this claim maybe held legally valued upon adjudication.” Chervin, 448 Mass. at n.8, quoting Restatement (Second) ofTorts, §676 cmt. e (1977). The existence of “probable cause is judged by an objective, rather than a subjective standard.” Chervin, 448 Mass. at 104, quoting Bednarz, 27 Mass.App.Ct. at 672. The determination is made based on the “information known to [the defendant] ‘at the time [it] instituted the complaint. . .’ ” Chervin, 448 Mass. at 104, quoting Carroll v. Gillespie, 14 Mass.App.Ct. 12, 19 (1982).
A genuine issue of material fact exists as to whether Derby and Lisciotti prosecuted their Land Court claim for an “improper purpose” for the same reasons it was determined that a genuine issue of material fact exists as to whether they used the Land Court summons for an “ulterior or illegitimate purpose.” Regardless, as will be discussed below, Derby and Lisciotti prevailed in their prior action in the Land Court and therefore, as a matter of law, their claim was brought with probable cause.
The prior proceeding in the Land Court did not terminate in Self-Storage’s favor. Derby brought suit in the Land Court seeking to litigate its rights to an easement over Self-Storage’s Property, pleading alternative theories of implication, prescription or estoppel. The Land Court agreed with Derby that it had an easement arising by implication - for the limited purpose of “accessing [the Barn] in connection with the agricultural use of [Derby’s Property].” Land Court Decision, at 9, n.20. The Land Court further clarified these rights, holding that “the presumed intention of the parties in 1965 did not contemplate use of the Cart Road in connection with a commercial subdivision on [Derby’s Property].” Land Court Decision, at 9. In dicta, the Land Court also found that the Barn had been removed, and that Derby and Lisciotti did not use Derby’s Property for agricultural purposes. Land Court Decision, at 6. Based on these facts, Self-Storage argues that the Derby’s easement has been abandoned and therefore, that the Land Court ruling terminated in its favor. This is not the case. Although future litigation may indeed determine that Derby’s easement to use the Cart Road has been abandoned, the Land Court decision contains no such holding. Therefore, because the prior proceeding did not terminate in Self-Storage’s favor, an essential element of its case cannot be met and the defendants’ motion for summary judgment must be allowed as to the malicious prosecution claim in Count III.

ORDER

For all of the foregoing reasons, the defendants’ motion for summary judgment is ALLOWED in part and DENIED in part. As to Count III (malicious prosecution) only, the motion is ALLOWED and that count is dismissed. As to Counts I (abuse of process) and II (civil rights violations under G.L.c. 12, §111), the motion is DENIED.

Derby dropped its prescriptive easement claim at the summary judgment heanng. Land Court Decision, at 6. n. 15.

Derby’s First Amended Complaint filed on May 22, 2006, added two counts of easement by estoppel. Land Court Decision, at 1.

Land Court Decision, at 9, n.20.

In its complaint, Self-Storage also alleges that Lisciotti delayed the issuance of Self-Storage’s building permit, pressured the Planning Board into requiring otherwise unnecessary site plan approval, and arranged for the City of Leominster to issue a cease and desist order against Self-Storage. However, Self-Storage has presented no direct evidence supporting its claim that Lisciotti was responsible for creating these impediments to its planned development, and apparently relies on the inference that Lisciotti was responsible for their occurrence because of his stated intent to thwart Self-Storage’s plans to develop Self-Storage’s Property. Furthermore, in his deposition, Leominster Building inspector Edward Cataldo testified that neither he nor his office was contacted by Lisciotti in relation to any of the plaintiffs three allegations.