Troy, Paul E., J.
INTRODUCTION
Plaintiff Bingo Innovative Software, LLC filed this action against the defendants alleging tortious interference with contract and conspiracy with respect to the granting of lottery contracts. This matter is before the court on the Massachusetts State Lottery Commission’s Motion to Dismiss pursuant to Mass.R.Civ.P. 12(b)(6). Also before the court is Defendants Cahill and Cavanagh’s Motion to Dismiss. For the reasons discussed below, the individual defendants’ motion to dismiss is DENIED in part and ALLOWED in part. In addition, the Massachusetts State Lottery Commission’s motion to dismiss is ALLOWED.
BACKGROUND
The following facts, taken from the complaint, are assumed to be true for purposes of this motion. At all relevant times, defendant Timothy Cahill (“Cahill”) was the Treasurer of the Commonwealth and the Chair of the Massachusetts State Lottery Commission (“Lottery”). Defendant Mark Cavanagh (“Cavanagh”) is the Executive Director of the Lottery. Bingo Innovative Software, LLC (“BIS”) is a small Rhode Island business which owns proprietary software designed to enable lotteries to implement Bingo games using lottery electronic infrastructure and other media including television, internet, and smartphones.
At various times, the Lottery issued a Request for Response seeking proposals for lottery games. In November of 2003, BIS competitor Scientific Games retained Regan Communications Group of Boston (“Regan”) to represent it in its efforts to procure and maintain such contracts. Regan employees visited Cahill several times to facilitate Scientific Games’s business interests. One component of Regan’s “pitch” was to allow Cahill to choose a charity which would benefit from donations from Scientific Games. Regan billed Scientific Games $8,000 per month. Upon receipt of payment, Regan would immediately remit $3,000 a month for “grassroot services” to CanAm Consultants, a public relations firm run by Cahill’s close friend Thomas Kelly.
Alan Middleton, the head of government relations for Scientific Games, was convicted of violating North Carolina’s lobbying laws for funneling funds through a public relations firm controlled by a political operative, Kevin Geddings, when North Carolina was considering creation of a state lottery. Geddings was convicted of fraud for failing to disclose his financial dealings with Scientific Games when he accepted a seat on the newly formed North Carolina Lottery Commission.
The Lottery issued a Request for Response seeking proposals for electronic games. On March 12, 2007, the Lottery commissioned a focus group to study BIS’s Bingo game and Scientific Games’s Daily Race Game using the same group of participants. John Della Volpe of Harvard University conducted the study, designed to elicit market preferences. A summary of the study concluded, “TV Bingo was aimed at the older, Lottery demographic and was a home run. While further discussion and some research ought to be done before a final decision is made to move forward, the qualitative research indicates that this game could be a major success for the Lottery.”
The Lottery did not release study results for the Daily Race Game. The Lottery entered into an agreement with Scientific Games to implement the Daily Race Game and purchased 1,000 high definition monitors at a cost of $500 each. The Daily Race Game was a “dismal failure” which the Lottery cancelled after seven months.
*450 After BIS pressured the Lottery to implement its Bingo game, the Lottery reluctantly signed a two-month pilot agreement providing that the Lottery would be responsible only for internal systems accommodations using current staff for the game and promotion of the game from its existing budget. Under the pilot agreement, BIS was responsible for providing the software for the game and other costs, and the parties agreed to use their best efforts to implement the game in 2008. By the fall of 2008, the Lottery had failed to take any steps to comply with its contractual obligations. BIS alleges that “ [t]his failure occurred as the direct and proximate result of directions given to Defendant Cavanagh by Defendant Cahill.” BIS further alleges that Cavanagh and Cahill caused Lottery employees to claim that the Lottery was under severe cost-cutting pressures in order to hinder implementation of the Bingo game.
In summer of 2010, Lottery officials informed BIS that a discussion of contract terms could not proceed until BIS obtained an agreement with G Tech. G Tech provides a license to the Lottery for use of certain intellectual property employed in the operation of Lottery games. Access to this intellectual property is necessary for any game provider to implement its game on the Lottery’s system. The Lottery’s contract with G Tech states that any entity given access to G Tech’s intellectual property must agree to abide by the same confidentiality requirements as the Lottery, but does not state anything about game providers executing separate contracts with G Tech. The Request for Response to which BIS originally responded did not mention such a requirement. G Tech markets a Bingo game in Europe and is a competitor of BIS for the U.S. market. BIS alleges that “[t]he policy of requiring game providers to obtain permission from G Tech effectively allows G Tech to determine which of its competitors will be able to do business with the Massachusetts Lottery.”
BIS alleges that Cahill and Cavanagh have acted for the improper purpose of providing “compensation to Scientific Games International for campaign fundrais-ing for Cahill. Such fundraising was undertaken by Scientific Games in a ‘pay to play’ scheme in which most-favored contractor status was awarded based on fundraising activity. Such fundraising was arranged by and through a political operative engaged by Scientific Games who enjoys a close personal relationship with Defendants and who is a neighbor of Defendant Cahill. The relationship has included fundraising among Scientific Games executives and others in New York City and elsewhere resulting in donations to Defendant Cahill’s campaign fund in substantial amounts.”
Cahill and Cavanagh knew that implementation of BIS’s Bingo game was crucial to BIS’s ability to demonstrate to other state lotteries that the game would be successful. BIS further alleges that Cahill and Cavanagh have acted with the improper purpose “to hinder and obstruct Plaintiffs business development for the benefit of G Tech, a competitor of Plaintiff in the provision of BINGO games to state lotteries” and “in order to interfere with and hinder the advantageous and contractual relations enjoyed by Plaintiff with the Lottery.” On July 9, 2010, BIS filed this suit against Cahill and Cavanagh individually, as well as the Lottery. BIS alleges that Cahill and Cavanagh intentionally interfered with BIS’s contract with the Lottery and with BIS’s advantageous relations with other lotteries. BIS further alleges civil conspiracy against all defendants.
Prior Litigation
BIS has attached to its opposition eight exhibits consisting of court documents relating to a prior federal lawsuit against Cahill and Cavanagh. In deciding a Rule 12(b)(6) motion, the court may consider only the allegations of the complaint, exhibits attached to the complaint, and matters of public record. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). Because BIS’s opposition to the motion to dismiss is based on judicial estoppel and issue preclusion with respect to the prior litigation, this Court will consider the federal court documents, which are a matter of public record.
BIS originally filed suit against Cahill and Cav-anagh in the United States District Court for the District of Massachusetts. In March of 2009, Cahill and Cavanagh moved to dismiss the federal complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing that BIS improperly named them in their individual capacities to circumvent the limitations of G.L.c. 258, the Massachusetts Tort Claims Act (“MTCA”). The defendants urged dismissal based on the § 10(b) discretionary function provision of the MTCA, and common-law immunity. In addition, they argued that the federal complaint failed to assert more than conclus-oiy allegations and failed to raise a right to relief above the speculative level. On July 16, 2009, the United States District Court (Tauro, J.) ordered, without any explanation or discussion, that the motions to dismiss be denied.
In December of 2009, Cahill and Cavanagh moved to dismiss the federal complaint pursuant to Fed.R.Civ.P. 19(b) and Fed.R.Civ.P. 12(b)(7) for failure to join as a necessary party the Lottery, an entity over which the federal court lacks jurisdiction. Before the District Court could rule on the motion, BIS assented to dismissal without prejudice for failure to name the Lottery as a defendant. Accordingly, the Court (Tauro, J.) dismissed the federal action on January 4, 2010.
DISCUSSION
As noted above, when evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 *451 (2008); Berish v. Bornstein, 437 Mass. 252, 267 (2002). The court need not accept as true legal conclusions cast in the form of a factual allegation. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). To survive a motion to dismiss, a complaint must contain factual allegations which, if true, raise a right to relief above the speculative level. Iannacchino v. Ford Motor Co., 451 Mass. at 636. Dismissal under Rule 12(b)(6) is proper where a reading of the complaint establishes beyond doubt that the facts alleged do not add up to a cause of action which the law recognizes, such that the plaintiffs claim is legally insufficient. Nguyen v. William Joiner Center for the Study of War and Social Consequences, 450 Mass. 291, 294 (2007); Pontremoli v. Spaulding Rehabilitation Hosp., 51 Mass.App.Ct. 622, 624 (2001).
I. CAHILL AND CAVANAGH’S MOTION TO DISMISS
Cahill and Cavanagh contend that the complaint fails to state a claim upon which relief can be granted because despite the assertion of claims against them individually, BIS’s claims in fact are based on actions taken in their official capacities for which they are immune. In addition, the individual defendants contend that the complaint fails to include sufficient factual averments to survive a Rule 12(b)(6) motion to dismiss.
BIS invokes the doctrine of issue preclusion, arguing that in denying Cahill and Cavanagh’s motion to dismiss the federal action, Judge Tauro ruled on the merits of the defendants’s pleading sufficiency and immunity arguments and rejected them.
A. ISSUE PRECLUSION
The doctrine of collateral estoppel, or issue preclusion, provides that when an issue of fact or law is actually litigated and determined by a final and valid judgment, and the determination was essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Alba v. Raytheon Co., 441 Mass. 836, 841 (2004); Day v. Kerkorian, 61 Mass.App.Ct. 804, 809, rev. den., 442 Mass. 1111 (2004).
1. Sufficiency of Factual Allegations
Collateral estoppel requires that the issue to be precluded was determined by a final and valid judgment. In order for a judgment to be final in this context, there must have been available some avenue of review for the prior ruling on the issue. Sena v. Commonwealth, 417 Mass. 250, 260 (1994); Tausevich v. Board of Appeals of Stoughton, 402 Mass. 146, 149 (1988). The denial of a Rule 12(b)(6) motion to dismiss is not a final adjudication of the parties’ rights; rather, it is a non-appealable interlocutory ruling which simply allows the claim to proceed toward trial. Cosmopolitan Trust Co. v. Cohen, 244 Mass. 128, 130 (1923). Accordingly, such a denial cannot constitute a final judgment on the merits for purposes of issue preclusion. See Lavalee v. Contributory Retirement App. Bd., 4 Mass. L. Rptr. No. 5, 94 (Sept. 11, 1995) (Toomey, J.) (collateral estoppel principles did not apply to court’s previous denial of motion to dismiss claim). Thus, the federal case does not preclude the individual defendants from relitigating whether the complaint alleges sufficient facts to forestall dismissal.
2. Immunity
With respect to the issue of the individual defendants’ immunity, the federal court’s ruling may be considered a final judgment on the merits because an order denying a motion to dismiss based on governmental immunity from suit may be appealed on an interlocutory basis. See Town of Boxford v. Mass. Highway Dept., 458 Mass. 596, 601 (2010). Nonetheless, issue preclusion applies only where there has been full litigation and careful decision of the particular issues. Alba v. Raytheon Co., 441 Mass. at 843. It is not available where there is ambiguity concerning the issues, the basis of decision, and what was deliberately left open by the judge. Day v. Kerkorian, 61 Mass.App.Ct. at 809. Here, where the United States District Court judge simply denied the motion to dismiss without any explanation or analysis, this Court cannot conclude that the immunity issue was fully and finally adjudicated adversely to Cahill and Cav-anagh so as to preclude litigation in this court.
B. SUFFICIENCY OF FACTUAL ALLEGATIONS
The individual defendants first claim that they are entitled to dismissal under Rule 12(b)(6) because the complaint lacks factual allegations which, if true, raise a right to relief above the speculative level. See Iannacchino v. Ford Motor Co., 451 Mass. at 636.
1. Interference with Contract
In order to establish intentional interference with contract, the plaintiff must show that it had a contract with a third party, the defendants knowingly induced the third party to break that contract, the interference was improper in means or motive, and the plaintiff was thereby harmed. Harrison v. NetCentric Corp., 433 Mass. 465, 476 (2001); Cachopa v. Town of Stoughton, 72 Mass.App.Ct. 657, 660 (2008). The individual defendants contend that the complaint fails to sufficiently allege that their actions caused the Lottery to fail to implement the Bingo game and fails to identify the specific provisions of the pilot agreement breached. However, the complaint alleges that Cav-anagh, at Cahill’s direction, caused the Lottery to fail to take any steps to use its best efforts to implement the Bingo game in 2008. This allegation plausibly suggests an entitlement to relief. See Iannacchino v. Ford Motor Co., 451 Mass. at 636. To survive an attack by motion to dismiss, a complaint need not contain detailed factual allegations; it need only contain allegations sufficient to raise the right to relief beyond the speculative level. Anzalone v. Administrative Office of the Trial Ct., 457 Mass. 647, 661 (2010). Although *452 BIS’s complaint is scant on details, it contains more than mere labels and conclusions and is minimally sufficient to state an interference claim.
The defendants further contend that the complaint fails to allege improper means or motive.
The improper means or motive element may be satisfied by a showing that the defendant acted with actual malice: a spiteful, malignant purpose unrelated to a legitimate corporate interest. Anzalone v. Administrative Office of the Trial Ct., 457 Mass. at 660; Howcraft v. City of Peabody, 51 Mass.App.Ct. 573, 597 (2001). However, an act may be wrongful without necessarily being malicious. Anzalone v. Administrative Office of the Trial Ct., 457 Mass. at 661. For purposes of a motion to dismiss, talismanic invocation in the complaint of “wrongful interference” or “unjust” behavior is insufficient to allege malice. Id. Here, however, the complaint alleges that the individual defendants were motivated by the desire to reward Scientific Games for campaign fundraising activity benefitting Cahill. This is a specific allegation of improper purpose unrelated to the Lottery’s legitimate corporate interest. Thus, although BIS’s ability to prove its allegations may be dubious, the complaint adequately alleges intentional interference with contract. See Richards v. Arteva Specialties, S.A.R.L., 66 Mass.App.Ct. 726, 730, rev. den., 447 Mass. 1111 (2006) (in ruling on a Rule 12(b)(6) motion, court must set aside incredulousness as to likelihood of proof of merits).
2. Interference with Advantageous Relations
This claim requires proof that the plaintiff had an advantageous business relationship with a third party, the defendant knowingly induced a breaking of the relationship, and the defendant’s interference was improper in motive or means, causing the plaintiff harm. Anzalone v. Administrative Office of the Trial Ct., 457 Mass. at 660; Blackstone v. Cashman, 448 Mass. 255, 260 (2007). To recover, the plaintiff need not prove a binding contract, but must show a probable future business relationship from which there is a reasonable expectancy of financial benefit. Owen v. Williams, 322 Mass. 356, 361-62 (1948); Goldhor v. Hampshire College, 25 Mass.App.Ct. 716, 725 (1988); Powers v. Leno, 24 Mass.App.Ct. 381, 385 (1987).
Here, the complaint alleges that “implementation of the Bingo game was crucial to Plaintiff for the purpose of demonstrating to other state Lotteries and other entities that the game would be successful . . .’’ and further alleges that the defendants’ conduct “caused delay in converting advantageous relations enjoyed with such Lotteries and other entities into formal agreements.” These broad and conclusoiy allegations, even if true, are insufficient to demonstrate that BIS had a probable future business relationship with a specific third party from which there was a reasonable expectancy of financial benefit. Cf. Adcom Products, Inc. v. Konic Business Machines USA, Inc., 41 Mass.App.Ct. 101, 104, rev. den., 423 Mass. 1111 (1996) (jury verdict for interference supported by ample evidence of contemplated contract between parties); Powers v. Leno, 24 Mass.App.Ct. at 385 (interference claim based on oral negotiations for purchase of land). In order to survive a motion to dismiss, the plaintiff must allege facts plausibly suggesting, not merely consistent with, an entitlement to relief. Anzalone v. Administrative Office of the Trial Ct., 457 Mass. at 661. Here, BIS’s complaint is devoid of facts plausibly suggesting the existence of an advantageous business relationship, and fails to rise above mere speculation. Accordingly, the complaint fails to state a claim upon which relief can be granted for intentional interference with advantageous relations.
3. Conspiracy
Finally, the individual defendants contend that the complaint fails to state a claim for conspiracy because it does not allege with specificity the existence of an agreement. To establish conspiracy, the plaintiff must prove a common plan between two or more people to commit a tortious act through concerted action. Kyte v. Philip Morris Inc., 408 Mass. 162, 166 (1990); Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998). The requisite agreement need not be express, and an implied agreement may be inferred from the conduct or two or more parties. Kyte v. Philip Morris Inc., 408 Mass. at 167-68. Here, the complaint, generously read, alleges that Cahill and Cavanagh combined with others at the Lottery to interfere with the pilot agreement and hinder implementation of the Bingo game for the purpose of harming BIS and rewarding Scientific Games for campaign fundraising for Cahill. This is sufficient to raise a right to relief for conspiracy beyond the speculative level. See Anzalone v. Administrative Office of the Trial Ct., 457 Mass. at 661. Cf. Neustadt v. Employers’ Liab. Assur. Corp., 303 Mass. 321, 326 (1939) (mere allegation that parties formed “illegal and unlawful” combination insufficient to state claim for conspiracy).
This Court emphasizes that the plaintiffs probable success in proffering admissible evidence to support its allegations is not at issue on a motion to dismiss. See Richards v. Arteva Specialties, S.A.R.L., 66 Mass.App.Ct. at 730 (in ruling on a Rule 12(b)(6) motion, court must set aside incredulousness as to likelihood of proof of merits). Although BIS’s complaint survives a motion to dismiss, its viability in the face of summary judgment may be dubious. See Saxonis v. City of Lynn, 62 Mass.App.Ct. 916, 918 (2004), rev. den., 443 Mass. 1104, cert. den., 546 U.S. 819 (2005) (noting that conclusoiy allegations of grandiose plot and cover-up were insufficient to survive summary judgment on conspiracy claim).
C. IMMUNITY FOR ACTIONS TAKEN IN OFFICIAL CAPACITY
Cahill and Cavanagh further contend that the complaint fails to state claims upon which relief can be *453 granted because although the complaint names them individually, the intentional interference and conspiracy claims are based on actions taken in their official capacities for which they are immune under the discretionary function exception set forth in § 10(b) of the MTCA, or alternatively, at common law.
1. Application of MTCA
The defendants argue that this Court “retains the discretion and authority to determine that naming the Individual Defendants in that capacity was improper, and that the alleged conduct was within their official capacities by its nature.” For this proposition, they cite a case in which the court, in ruling on a claim under 42 U.S.C. §1983, concluded that the Commissioner of Correction was not personally liable for damages, where nothing in the complaint indicated that he was sued in his individual or personal capacity and the judge concluded that the plaintiffs in fact sought to impose liability on him for actions which he took in his official capacity. See O’Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 & n. 14 (1993). In contrast to the complaint in O’Malley, BIS’s complaint clearly alleges personal liability against Cahill and Cavanagh in their individual capacities. Nothing in O’Malley supports the proposition that where a plaintiffs complaint evinces a clear intent to sue a public employee individually for an intentional tort, the court may unilaterally declare that the employee should have been sued only in his official capacity.[2]
Further, this Court is not persuaded that it was improper to name the defendants in their individual capacities. As emphasized by Cahill and Cavanagh in urging that they should have been sued in their official capacities, their allegedly tortious conduct of favoring Scientific Games and refusing to advance BIS’s Bingo game occurred in the course of their roles as Chairman of the Massachusetts State Lottery Commission and Executive Director of the Lottery. However, suing a public employee in an “official” capacity generally represents no more than another way of pleading an action against the entity of which he is an agent. Phillippe v. Wallace, 714 F.Sup.2d 219, 222 (D.Mass. 2010). Cf. O’Malley v. Sheriff of Worcester County, 415 Mass. at 142 (noting that under §1983, liability turns on capacity in which State officials are sued, not capacity in which they acted when injuring plaintiff). The procedural history of this case reveals that the crux of BIS’s suit is not an attempt to hold the Lottery liable for Cahill and Cavanagh’s conduct but rather, an attempt to hold the individual defendants personally liable for damages for alleged wrongdoing which exceeds the scope of their employment: i.e., rewarding with favorable treatment a competitor of BIS who raised funds for Cahill’s political campaign. This allegation, the truth of which this Court must accept for purposes of this motion, suggests action not within a lottery employee’s official capacity, raising the potential for personal liability. See Parker v. Chief Justice for Admin. & Mgmt. of the Trial Court, 67 Mass.App.Ct. 174, 180 (2006) (intentional tort claim may be asserted only against public employee in his individual capacity). Accordingly, Cahill and Cavanagh have not established that they were sued in an improper capacity.
Where a public employee is sued individually for an intentional tort, the MTCA, and its relevant discretionary function exemption, does not apply. Nelson v. Salem State College, 446 Mass. 525, 537 (2006); South Boston Betterment Trust Corp. v. Boston Redev. Auth., 438 Mass. 57, 69 (2002). Accordingly, BIS’s claims are not governed by the MTCA, and the individual defendants are not entitled to dismissal based on § 10(b).
2. Common-Law Immunity
Cahill and Cavanagh argue in the alternative that the complaint fails to state cognizable legal claims because they are entitled to the benefit of common-law immunity. At common law, public officials are immune from liability for negligence or other error with respect to decisions made in the exercise of discretion or judgment and acts performed in the making of such decisions, within the scope of their duty and authority. South Boston Betterment Trust Corp. v. Boston Redev. Auth., 438 Mass. at 69; McDonough v. Whalen, 365 Mass. 506, 515 (1974). This immunity is limited to public officials acting in good faith, without malice, and without corruption. South Boston Betterment Trust Corp. v. Boston Redev. Auth., 438 Mass. at 69; Gildea v. Ellershaw, 363 Mass. 800, 820 (1973). As emphasized by the defendants, there is a presumption in favor of the honesty and motives actuating public officers in actions ostensibly taken for the general welfare. South Boston Betterment Trust Corp. v. Boston Redev. Auth., 438 Mass. at 69.
Nonetheless, the posture of this case is a motion to dismiss, not summary judgment, and the probable inability of BIS to produce admissible evidence to overcome the presumption of regularity is not at issue. Cf. Nelson v. Salem State College, 446 Mass. at 538 (public officials entitled to common law immunity where summary judgment record contained no evidence from which jury could infer that they acted in bad faith or with malice). Rather, this Court must accept as true the allegations of the complaint that Cahill and Cavanagh acted to hinder BIS in order to reward Scientific Games for fundraising activity ben-efitting Cahill. This in effect alleges bad faith, corruption and conduct outside the scope of duty and authority, which may preclude common-law immunity. See Ramos v. Board of Selectmen of Nantucket, 16 Mass.App.Ct. 308, 314, rev. den., 390 Mass. 1103 (1983) (bad faith means dishonest purpose, conscious wrongdoing, or breach of known duty through motive of interest or ill will); Cachopa v. Town of Stoughton, 72 Mass.App.Ct. at 665 (selectmen not entitled to common-law immunity for intentional interference with contract in light of evidence that in firing police chief, they acted with malice to gain revenge for chiefs *454 failure to cooperate in department politics). Cf. Jaffarian v. Murphy, 280 Mass. 402, 407-08 (1932) (mayor entitled to immunity where although he was arbitrary and capricious in denying license, his decision was not based on personal financial interest). Cahill and Cavanagh have not demonstrated that the complaint fails to state a cognizable claim against them because they are entitled to common-law immunity from suit.
II. LOTTERY’S MOTION TO DISMISS
In a separate motion, the Lottery moves to dismiss the sole count against it, conspiracy, for failure to state a claim upon which relief can be granted.
A. JUDICIAL ESTOPPEL
BIS contends that the defendants are barred by the doctrine of judicial estoppel from seeking dismissal of the Lottery as a party because the individual defendants argued in federal court that the Lottery was a necessary party to this dispute. Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding. Blanchette v. School Committee of Westwood, 427 Mass. 176, 184 (1998); Sandman v. McGrath, 78 Mass.App.Ct. 800, 801 (2011). In determining whether a party should be judicially estopped, the court examines whether that party is seeking to use the judicial process in an inconsistent way that courts should not tolerate. Blanchette v. School Committee of Westwood, 427 Mass. at 184. See also Canavan’s Case, 432 Mass. 304, 309 (2000) (purpose of doctrine is to prevent manipulation of judicial process). Judicial estoppel calls for the exercise of discretion in its application to particular facts. Sandman v. McGrath, 78 Mass.App.Ct. at 802.
The application of judicial estoppel requires both that the position being asserted is directly contrary to the position previously asserted, and that the party succeeded in convincing the court to accept its prior position. Id. at 801-02. Here, there is no direct inconsistency in arguing that the Lottery is a necessary party to this dispute and arguing that once named as a defendant, the Lottery has viable defenses, including sovereign immunity. Moreover, the record does not reflect that the individual defendants successfully convinced the United States District Court to adopt its position; rather, BIS assented to dismissal of the federal action. Cf. Jarosz v. Palmer, 436 Mass. 526, 529 (2002); Tausevich v. Board of App. of Stoughton, 402 Mass. at 149 (dismissal of action by stipulation is not final judgment on merits entitled to preclusive effect). This Court, in its discretion, concludes that the Lottery is not estopped from now advancing the position that it is entitled to dismissal from this action based on sovereign immunity.
B. MERITS OF MOTION TO DISMISS
The Lottery has established that the complaint fails to state a claim against it for conspiracy to commit intentional interference with contract. It is well established that under the MTCA, a public employer cannot be sued for its employees’ intentionally tortious conduct. G.L.c. 258, §10(c); Nelson v. Salem State College, 446 Mass. at 537; Cachopa v. Town of Stoughton, 72 Mass.App.Ct. at 665. Thus, the Lottery is not liable to BIS for Cahill and Cavanagh’s interference with the pilot agreement or conspiracy to commit the tort of contractual interference. See Cachopa v. Town of Stoughton, 72 Mass.App.Ct. at 665; Howcraft v. City of Peabody, 51 Mass.App.Ct. at 596.
Moreover, it appears that BIS’s claim against the Lottery fails due to lack of presentment. Pursuant to G.L.c. 258, §2, a condition precedent to suit against a public employer is the presentment of the claim in writing to the appropriate executive within two years after the date upon which the cause of action arose. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 283 (1985); Vasys v. Metropolitan District Comm'n, 387 Mass. 51, 55 (1982). The purpose of this requirement is to ensure that the officer with authority to settle the claim has an adequate opportunity to investigate the circumstances surrounding the claim and determine whether to offer a settlement. Lopez v. Lynn Housing Auth., 440 Mass. 1029, 1030 (2003). If presentment is not made in strict accordance with the statute, the plaintiffs complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Spring v. Geriatric Auth. of Holyoke, 394 Mass. at 283; G&B Assoc., Inc. v. Springfield, 39 Mass.App.Ct. 51, 54 (1995). BIS does not appear to dispute the defendants’ assertion that no presentment was made. Accordingly, the Lottery is entitled to dismissal of the conspiracy claim against it.
ORDER
For the foregoing reasons, it is hereby ORDERED that Defendants Cahill and Cavanagh’s Motion to Dismiss be ALLOWED with respect to the claim for intentional interference with advantageous relations but is otherwise DENIED. It is further ORDERED that the Massachusetts State Lottery Commission’s Motion to Dismiss be ALLOWED.

Further, in contrast to the intentional interference and conspiracy claims alleged here, O’Malley involved a §1983 claim based on disciplining inmates without affording them proper procedural safeguards. See 415 Mass. at 134-35.